## SADLER v. JESTER.
### No. 740.

District Court, N. D. Texas, Dallas Division.

Sept. 22, 1942.

William Andress, Jr., of Dallas, Tex., for plaintiff.

Ernest May, of Fort Worth, Tex., Church & Bane, of Dallas, Tex., and Charles L. Black and Dan Moody, both of Austin, Tex., for defendant.

ATWELL, District Judge.

A motion to dismiss being presented, and the facts being unsettled, action thereon was deferred and the entire case submitted.

As thus exposed, I find that the plaintiff was a duly elected Railroad Commissioner for a term of six years which be-

gun in 1938. In May, 1942, he conferred with the Governor about resigning and advised that official that he would like to have a Mr. Kilday appointed in his stead. This, the Governor agreed to do. The Governor had in mind that such appointment would be for the filling of the office until the political party whose primary was imminent had made a nomination and then, that he, the Governor, would appoint such person to fill the remainder of the term.

The resignation was not forthcoming until on the eve of the last day for the filing of candidates for the primary nomination. The occurrence becoming known, the executive committee of the party held a meeting early in June and extended the time within which persons might file for consideration in such primary, to June 11th, 1942.

A number of persons became candidates therein, among whom was the defendant.

The Governor did not accept the resignation of the plaintiff, but asked the plaintiff to withdraw it, which the plaintiff refused to do. Two lawsuits followed, in one of which the defendant secured a judgment from the trial and appellate courts of the state.

The defendant secured the nomination, and thereupon the Governor appointed him to that portion of the term of the plaintiff which would expire January 1st, 1943.

Plaintiff returned to his office and signed a number of orders as Railroad Commissioner. The defendant appeared after his appointment, on August 24th, 1942, and took over the office of Commissioner, where he is now so acting.

The annual salary of a Commissioner is $7,000.

The general election at which the nominees of the political party referred to will be up for choosing will be November, 1942. The nominees of that party are usually chosen at such elections.

On June 6th, 1942, the plaintiff accepted and qualified as an officer in the United States Army under an Act of 1941. At that time he declared the office which he held, vacant, and his resignation thereof.

This suit is brought on the theory that the complainant is being deprived of the right to a public office without due process of law, and in violation of the 5th and 14th Amendments to the national Constitution, to which he was chosen by the electorate,

and he prays for an injunction to prevent the defendant from so usurping.

So far as I am able to see, no act has been done by the national government, or, under its authority, for the alleged deprivation of the plaintiff of the office. Apparently, all of the acts that are complained of are acts of state officers, or, of a political committee, and of a private citizen, who is, or, was, the present defendant.

Since the 5th Amendment operates only as a protection against national government errors or wrongs, the plaintiff must find his relief, if he is to get any, under the 14th Amendment. A national court will protect a citizen under either amendment provided it is applicable to his situation.

The 14th Amendment, as I have already said, operates so as to extend to the citizen and to the resident of the state, the same protection against arbitrary state action affecting his life, liberty or property, as is offered by the 5th Amendment against similar wrong by the nation.

When a state officer, in violation of a state law, undertakes to deprive an accused party of a right which the state law affords him, it ought to be presumed that the state court will redress the wrong. If the accused is deprived of a right, final and practical denial will be in the judicial tribunal which tries the case.

Article 6447, Vernon's R.S.Tex.1936, provides, "the Railroad Commission of Texas shall be composed of three members, one of whom shall be elected biennially at each general election for a term of six years."

That same Section provides that, "No railroad commissioner shall hold any other office of any character, while such commissioner, nor engage in any occupation or business inconsistent with his duties as such commissioner." The office of each Commissioner is fixed at the capitol of the state.

Article 6253, Vernon's R.S.Texas, 1936, provides that "If any person shall usurp, intrude into or unlawfully hold or execute, * * * any office * * * created by the authority of this State, or any public officer shall have done or suffered any act which by law works a forfeiture of his office, * * * the Attorney General, or district or county attorney of the proper county or district, either of his own accord or at the instance of any individual relator, may present a petition to the district court

of the proper county * * * for leave to file an information in the nature of a quo warranto in the name of the State of Texas."

"If any person * * * against whom any such proceeding is filed shall be adjudged guilty as charged, the court shall give judgment of ouster against such person * * * for usurping, intruding into or unlawfully holding and executing such office * * * and shall give judgment in favor of the relator for costs of the prosecution." Article 6257.

■ In Troilo v. Gittinger, Tex.Civ. App., 230 S.W. 233, it was held, that an injunction cannot be invoked to try the right to an office since provision is made in the Revised Statutes of Texas for the ouster of any intruder or usurper of an office through an information in the nature of a quo warranto.

To the same effect is the case of Black v. Lambert, Tex.Civ.App., 235 S.W. 704, 705, and Ehlinger v. Rankin, 9 Tex.Civ. App. 424, 29 S.W. 240. At page 1008, 46 C.J., are many citations to the same effect, from other states. In Texas a straight suit may be brought also, as for other property.

■ One who is already in an office may, by injunction, however, prevent interference thereof and therewith by an outsider. But it seems to be the rule that the title to an office is tested by quo warranto, or direct suit, and not by injunction. Quo warranto is purely a statutory proceeding authorized by the sovereignty for the protection of that particular government and officials.

■ The statute quoted above relating to the qualifications and duties of Railroad Commissioners in Texas, suggests an impediment to the plaintiff's right to recover. He became an officer in the United States Army. One cannot serve in such a capacity without breaching the state statute quoted above, which inhibits him from holding another office. He did not become an officer in the Reserve Corps. He was commissioned under a different act with certain of the benefits of the Reserve Corps. See § 40, Art. 16, Tex.Constitution Vernon's Ann. St.; Acts 77 Cong., Public Law 252, chap. 414, 10 U.S.C.A. § 484 note; 10 U.S.C.A. § 576.

■ Likewise, an important question has been raised by the resignation of the plaintiff. It is well recognized that an officer has the right of resignation, but in the absence of a statute, his resignation does not become effective until accepted by the proper authorities.

Mr. Justice Bradley in Edwards v. United States, 103 U.S. 471, 475, 26 L.Ed. 314, reasoned rather soundly that, "a resignation must be accepted before it can be regarded as complete." To hold otherwise would be to enable any office-holder to throw off his official character at will and leave his community unprotected. Having been elected to a public office, he has not the right on his own motion to resign. His resignation will not become effective to relieve him from his duties until accepted by lawful and competent authority.

■ A resignation to be effective must be made with the intention of relinquishing the office and accompanied by the act of relinquishment. It must be tendered to the person having the power to appoint a successor, if there is no statutory provision providing otherwise. If it is an elective office, it must be tendered to the person who has the power to call an election to fill the vacancy.

■ Except where there has been undue delay in accepting a resignation, an unconditional resignation which has been transmitted to the authority entitled to receive it, cannot be withdrawn. 46 C.J., page 980.

A resignation implied from the acceptance of an incompatible office, may not be withdrawn.

I have found no provision in the statutes of Texas referring to resignations of officers, but the state constitution, Art. 4, § 12, refers to vacancies in state offices and for their filling by the Governor, which appointment continues to the next general election, and this is made particularly applicable to Railroad Commissioners in Art. 16, § 30 of the Constitution.

■ The rule seems to be general that an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine his right thereto. See cases cited supra, as well as a long list of authorities from a great many of the states, at page 1007, 46 C.J.

As we have already stated, and as is well known to the profession, the protective amendments operate for the individual, but not against individuals. They operate against, respectively, the nation and

the state, or, municipality. The individual who benefits by illegal acts of state, or, nation, or, municipality, may lose such benefit.

The most that can be said here for the plaintiff's cause is that he had been chosen to a public office. While he was in that office, he sought and received another, and a different office in the national sphere. He tendered his resignation to the Governor of the state, advising that official, both in his resignation and through the public press, that he had accepted an United States Army appointment and felt it his duty to resign the Railroad Commissionership.

When he accepted the Army appointment, he put into operation the state statute which denied him the right to be a member of the Railroad Commission of Texas, and at the same moment to hold another office.

When he sent his resignation to the Governor, he sent it to the proper person. The Governor had a right to accept and to call an election for the choosing of his successor. The Governor did take such steps as he, the Governor, thought appropriate. It was, therefore, not a resignation that the plaintiff could withdraw.

In order to give everyone like opportunity, the Governor announced that since the Democratic primary was near at hand, he would appoint that one to fill the vacancy who should be chosen in the primary. That course was followed. After the defendant was nominated in the primary, the Governor appointed him to fill the vacancy caused by the plaintiff's resignation and by the plaintiff's act in accepting another office which the statute forbade.

The liberty under which the plaintiff acted originally in resigning was personal to him. He was not forced to so act. The state of Texas took no part in causing him to tender his resignation. It took no part in causing him to accept an office in the United States Army. The defendant had nothing to do with either of those acts. Plaintiff made his own choice and chose his own road. When those choices were made, citizen Jester had the right to offer as a candidate to fill the vacancy. The governor of the state had the right, as well as the duty, of appointing such person as to him would be acceptable and efficient. The time for making such appointment was within his discretion. There is nothing in the machinery of the state for meeting such an emergency that deprives or deprived the plaintiff of "due process."

What I have said brings to the front, rather clearly, the jurisdictional questions raised by the defendant, namely, the amount in controversy and the presence of a federal question.

If it be conceded that the state statute which authorizes the governor to fill a vacancy until the next general election governs, then the amount in controversy is below $3,000.

As to the second asserted ground for lack of jurisdiction, we have already found that the contest between these two gentlemen relates to a Texas office. Each is a resident of Texas. When the plaintiff sought to relinquish the office in June of the present year, the state statutes alone were brought into operation. The validity of his appointment to an Army position under the federal statute, is not involved. The similarity of the statute under which he was appointed, and the Reserve Officers statute is not involved, because he was appointed under the 1941 statute with its obligations and some of the privileges of the Officers Reserve statute. The state exempting statute related only to reserve officers and the Congress could not determine what Texas should do with reference to the new Army positions. If the plaintiff has not forfeited his office he can test that out in the state court.

Such cases as American Well Works Co. v. Layne, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987; Louisville & N. R. Co. v. Western Union Tel. Co., 237 U.S. 300, 35 S. Ct. 598, 59 L.Ed. 956; Miller's Executors v. Swann (Miller v. Anderson), 150 U.S. 132, 14 S.Ct. 52, 37 L.Ed. 1028; and, finally, Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, wherein Mr. Justice Cardozo clearly pointed the way, are helpful in confirming our conclusion that the plaintiff's action is one that has no standing in a national court. City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 171, 62 S.Ct. 986, 86 L.Ed. ——.

The bill must be dismissed.