We do not think that the temporary injunction must fall under any of these attacks.

 In High on Injunctions (4th Ed.), vol. 1, p. 693, sec. 730, it is said that in instances of trespass to mining property greater latitude is allowed courts of equity than in restraining ordinary trespasses to realty, "since the injury goes to the immediate destruction of the minerals which constitute the chief value of this species of property." Trespasses of this character are irreparable because they subtract from the very substance of the estate, hence equity is quick to restrain them. See note to Jerome v. Ross, 11 Am.Dec. 484, 500, 501. Moreover, "it is obvious that where the trespass is continuous in its nature, constantly adding to the injury, the legal remedy is inadequate because a jury cannot fix upon a time when the wrong may be said to be complete." 11 Am.Dec. at page 504. Amick v. Gauley Coal Land Co., 119 W.Va. 485, 194 S.E. 268; Harris v. Krekler, 113 Ind.App. 190, 46 N.E.2d 267.

While it is true that petitioners' well has not been completed, nevertheless the respondents allege that it will be completed and within their subsurface and oil taken therefrom. After hearing the testimony the trial court found that there is probable cause to believe that these allegations are true, hence that petitioners are committing a continuing trespass upon respondents' tract. Under those circumstances the temporary injunction was not beyond the discretion of the trial court to grant. Indianapolis Nat. Gas. Co. v. Kibby, 135 Ind. 357, 35 N.E. 392; Quality Excelsior Coal Co. v. Reeves, 206 Ark. 713, 177 S.W.2d 728. Petitioners' contentions are discussed in 43 C.J.S., Injunctions, §§ 56, 61, 62, 63 & 64.

Petitioners urge that granting injunctive relief in this case required a location of the boundary line between the Mays and Phillips tracts and that therefore the trial court erred in overruling their plea in abatement suggesting that some

royalty holders, owners and others at interest in the two tracts were not parties to this suit. We cannot pass on that question because the trial court's ruling on the plea in abatement was an interlocutory order and is not appealable, although it comes along with the interlocutory order of temporary injunction. Zanes v. Mercantile Bank & Trust Co., Tex.Civ.App., 49 S.W. 2d 922, er. ref.; Magnolia Petroleum Co. v. State, Tex.Civ.App., 218 S.W.2d 855, er. ref., N.R.E.

The judgments below are affirmed.

**SAWYER v. CITY OF SAN ANTONIO et al.**

**No. A–2701.**

Supreme Court of Texas.

Nov. 15, 1950.

Rehearing Denied Dec. 20, 1950.

Charles J. Lieck, San Antonio, for petitioner.

Austin F. Anderson, City Attorney, and W. Ray Scruggs, Assistant City Attorney, San Antonio, for respondents.

SMEDLEY, Justice.

Petitioner Sawyer filed this suit against respondents, the City of San Antonio, its Mayor and four Commissioners and its Chief of Police, to compel them to reinstate him as a policeman and to recover salary of $200.00 per month from the time when he was relieved of his duties. The trial court, hearing the case without a jury, made elaborate findings favorable to petitioner and rendered judgment in his favor, after concluding that a written resignation executed by petitioner and delivered to the Chief of Police was never effective because it was not accepted by the proper authority and was withdrawn by petitioner, and because the resignation was procured by coercion and duress. The Court of Civil Appeals held that it conclusively appears from the record that the resignation was effective and that it was not procured by coercion or duress, reversed the trial court's judgment and rendered judgment that petitioner take nothing. 228 S.W.2d 942.

On the night of July 17, 1948, petitioner, who was a policeman of the City of San Antonio, became involved in an altercation with three persons arrested for drunkenness whom he was transporting to the city jail. There is conflict in the testimony as to petitioner's conduct, and the trial court in its findings credited in the main the testimony given by the petitioner. His testimony shows, however, that he struck one of the arrested men with his pistol and hit the other two with his fists, that he cursed bystanders who protested his treatment of the prisoners, and may have addressed vile names to them, and that the Captain at the Police Station took his gun and badge from him and sent him home "for talking loud and cursing, this incident with the prisoners".

On July 19, 1948, petitioner was called to the office of the Chief of Police and signed a resignation addressed "Attention Chief Palmer", stating that he thereby tendered his resignation from the Police Department to become effective July 19, 1948. On the same day the Chief of Police signed a statement that the resignation of petitioner was accepted by him, to be effective July

19, 1948. The trial court found that on the next day, July 20, 1948, petitioner retracted his resignation and so advised the Chief of Police. This finding is supported by petitioner's testimony, which is that on July 20, 1948, he went back to the Chief of Police and told him that he wanted to withdraw the resignation and that the Chief of Police said he could not withdraw it, that he was already out.

The Chief of Police on July 20, 1948, wrote to the Director of the Firemen's and Policemen's Civil Service Commission of the City of San Antonio advising him that petitioner had resigned from the San Antonio Police Department as of July 19, 1948, and requesting that the vacancy created by the resignation be filled from the eligible list as soon as possible.

It was proved by the testimony of the Fire and Police Commissioner of the City that he received copies of correspondence from the Chief of Police, other copies having gone to the Director of the Civil Service Commission, stating that three policemen, including petitioner, had resigned, and requesting that the vacancies thus created be filled from the eligible list. He testified further that he requested the Director to supply him with names from the eligible list to fill the vacancies, that the Director came to him with the list, and that he and the Director went to the Mayor's office and the Mayor, using the top names on the list, made the appointments to fill the vacancies. This was done on or about August 1, 1948. The testimony of the Fire and Police Commissioner was not contradicted and he was not cross examined by petitioner.

On August 4, 1948, petitioner, apparently believing that the Firemen's and Policemen's Civil Service Commission was authorized to accept or otherwise act upon resignations of policemen, wrote a letter to that Commission stating that he wished to withdraw his resignation due to the fact that he resigned without forethought, and saying further that he resigned because he feared that the Police Department might receive bad publicity on account of his behavior on the night of July 17, 1948. The Civil Service Commission gave petitioner a hearing, and on August 6, 1948, passed a resolution restoring him to duty and directing that he be paid from the date of his removal from service. On account of that resolution the Chief of Police restored petitioner to his place as a policeman.

The Commissioners of the City of San Antonio, on August 12, 1948, passed a resolution signed by the Mayor which recited that the order of the Civil Service Commission restoring petitioner to duty and directing that he be paid from the date of his removal was a usurpation of power and beyond the jurisdiction of that Commission. The order of the City Commissioners confirmed and ratified the action of the Chief of Police in accepting petitioner's resignation and directed him to omit petitioner's name from the pay roll from and after July 19, 1948, and to give him no assignment of duty. The Chief of Police carried out the order of the City Commissioners.

Chapter 325, Acts Regular Session 50th Legislature, Vernon's Annotated Civil Statutes, Article 1269m, entitled "Firemen's and Policemen's Civil Service—Cities of 10,000 or More" was adopted by the City of San Antonio. The Act establishes a Civil Service Commission of three members appointed by the chief executive of the city, with confirmation by its legislative body, and creates the administrative office of director, who is also secretary of the Commission, provides that firemen and policemen shall be classified and shall be under civil service protection. The chiefs of the police and fire departments are appointed by the chief executive of the city and confirmed by its legislative body. The Commission is required to make provision for competitive examinations for positions on an eligibility list, from which vacancies in the fire department and police department shall be filled. When a vacancy occurs in either department the head of the department requests the Commission for the names of suitable persons from the eligibility list and the director certifies to the chief executive of the city the names of three persons having the highest grades on the eligibility list. Thereupon the chief executive makes the appointment from those three names. The Act provides for rules and regulations to

be made by the Commission prescribing causes for removal or suspension of firemen or policemen, but specifies the several grounds which must be involved in the rules. Authority is given to the chief or head of the fire department or police department to suspend indefinitely any officer or employee under his supervision for violation of civil service rules, but the chief is required within forty-eight hours to file with the Commission a written statement giving the reasons for the suspension and to furnish a copy to the suspended officer or employee. Within ten days the officer or employee may appeal to the Commission, which holds an inquiry and determines whether the suspended officer or employee shall be permanently or temporarily dismissed or restored to his former position. Provision is made for the filing of suit in district court by a fireman or policeman dissatisfied with the decision of the Commission. The Act contains nothing whatever with respect to resignations of policemen or firemen, no provision as to whom resignations shall be directed, or by whom resignations may be accepted, and no provision as to withdrawal or retraction of resignations.

 The Act does not authorize the Civil Service Commission to receive or to accept the resignation of a policeman or fireman or to determine whether the resignation is or is not effective to terminate the resigning officer's title or right to the office. We have been cited to no charter provision and no statute, and we find none, prescribing the method for resigning from these offices. Policemen are public officers. Yett v. Cook, 115 Tex. 205, 220, 281 S.W. 837; City of Dallas v. McDonald, 130 Tex. 299, 103 S.W.2d 725, 107 S.W.2d 987; McQuillin's Municipal Corporations (3d Ed.) Vol. 16, p. 528, Sec. 45.11; Note 156 A.L.R. pp. 1356–1358. We look, therefore, to the established general rules as to resignations of public officers applicable in the absence of statutory provisions.

 The generally accepted rule is that the resignation of a public officer must be tendered to the person having the authority to appoint a successor. Sadler v. Jester, D.C., 46 F.Supp. 737, 740; Edwards v. United States, 103 U.S. 471, 26 L.Ed. 314; 67 C.J.S., Officers, § 55, p. 228; 43 Am.Jur. p. 24, Sec. 168; McQuillin's Municipal Corporations (3d Ed.) Vol. 3, pp. 443–444, Sec. 12.125. While there are cases holding that an unconditional resignation is immediately effective, the weight of authority, the better rule, is that the resignation of a public officer is not complete until it is accepted by the proper authority, that is, by the person who is authorized to fill the vacancy. Acceptance is required in order that the public interest may suffer no inconvenience for want of public servants to execute the law. Edwards v. United States, 103 U.S. 471, 26 L.Ed. 314; Sadler v. Jester, D.C., 46 F.Supp. 737; Commonwealth ex rel. Wootton v. Berninger, 255 Ky. 451, 74 S.W.2d 932, 95 A.L. R. 213, and Note pp. 215–220; Dostie v. Board of Mayor and Aldermen of City of Lewiston, 114 Me. 62, 95 A. 353; McQuillin's Municipal Corporations (3d Ed.) Vol. 3, p. 443, Sec. 12.125. Acceptance of a resignation may be evidenced either by a formal declaration "or by something tantamount to an acceptance, such as the appointment of a successor". 43 Am.Jur. pp. 23–24, Sec. 167; Edwards v. United States, 103 U.S. 471, 26 L.Ed. 314, 315; Commonwealth ex rel. Wootton v. Berninger, 255 Ky. 451, 74 S.W.2d 932, 95 A.L.R. 213. Since acceptance is necessary to the completion of a resignation, the resigning officer may withdraw his resignation before it has been accepted by the proper authority. Commonwealth ex rel. Wootton v. Berninger, 255 Ky. 451, 74 S.W.2d 932, 95 A.L.R. 213; Dostie v. Board of Mayor and Aldermen of City of Lewiston, 114 Me. 62, 95 A. 353; McQuillin's Municipal Corporations (3d Ed.) Vol. 3, pp. 437–438, Sec. 12.122.

It follows from the foregoing rules, when applied to the facts of this case, that the resignation signed by petitioner and delivered to the Chief of Police did not become effective. It was withdrawn or retracted before it was accepted by the official who was authorized to accept it. The Civil Service Act authorizes the Mayor of the City, when a vacancy occurs in the Police

Department, to make the appointment to fill it and so empowers the Mayor to accept resignations of policemen. The Act does not give that authority to the Chief of Police. The written resignation was addressed to the Chief of Police and delivered to him, and on the same day he signed a written acceptance of it. According to the finding made by the trial court, which is supported by petitioner's testimony, petitioner on the next day retracted his resignation and so advised the Chief of Police. It is unimportant that the resignation was addressed to the Chief of Police, and if before it was withdrawn or retracted it had been called to the attention of the Mayor and had been accepted by the Mayor, it would thereby have been made effective. Byrne v. City of St. Paul, 137 Minn. 235, 163 N.W. 162, L.R.A.1917F, 545.

The record shows, however, that no action was taken by the Mayor with reference to the resignation until August 1, 1948, when he made an appointment of a successor to petitioner. This action would have been tantamount to an acceptance of the resignation had it been taken before the resignation was retracted, but it was not taken until about ten days after petitioner advised the Chief of Police that he desired to withdraw the resignation. In view of the trial court's finding and petitioner's testimony, the oral withdrawal of the resignation was as effective as a written withdrawal, signed by the petitioner and delivered to the Chief of Police, would have been. The written resignation was still in the hands of the Chief of Police, who had signed an acceptance of it under the mistaken belief that he had the authority thus to terminate petitioner's employment. Petitioner sought to withdraw the resignation and was told by the Chief of Police that he could not withdraw it, "that he was already out". The later events, petitioner's action in seeking relief from the Civil Service Commission, the resolution of that Commission restoring him to duty, and the resolution of the City Commissioners confirming and ratifying the Police Chief's acceptance of the resignation, indicate confusion in the minds of the petitioner and the several officials as to the effect of the resignation and its withdrawal, and as to the extent of the authority of the several officials, but they do not alter the fact, found by the trial court, that petitioner retracted the resignation and advised the Chief of Police that he was retracting it while it was still in the hands of the Chief of Police and before it was accepted by the Mayor.

In view of our conclusion that the resignation did not become effective, we express no opinion as to the correctness of the decision of the Court of Civil Appeals that the resignation was not procured by coercion or duress.

One of the points in respondents' brief in the Court of Civil Appeals complains of that part of the judgment of the trial court which awards to petitioner the recovery of "the sum of $200.00 per month in the future on the 12th day of each month beginning May 12, 1949". Petitioner's suit is for a mandatory writ requiring respondents to reinstate him in the Police Department as of August 12, 1948, and for the recovery of his lost wages of $200.00 per month from that date. The trial petition alleges that "because of the action of the defendants he has suffered a loss thereof (his monthly wages or salary) up to the present, and probably will suffer a loss thereof in the future until his status is determined by judgment herein, *and therefore he seeks to recover herein all compensation and pay which he will lose up to the time of judgment herein*." (Emphasis added.) The prayer is that he recover judgment "for his lost wages of $200.00 per month from August 12, 1948, or any other date to which he may show himself entitled up to the date of judgment".

The judgment of the district court was rendered April 28, 1949. It recites that eight months of compensation at $200.00 per month have accrued to April 12, 1949, with the finding that petitioner is entitled to judgment for the sum of $1600.00 with interest at the rate of six per cent per annum on each $200.00 payment from the due date thereof. It recites further that petitioner will be entitled to recover the sum of $200.00 per month in the future and until his service in the Police Department is

terminated. It orders, adjudges and decrees that petitioner "recover judgment against the City of San Antonio for the sum of $200.00 each month commencing with the first $200.00 due and payable on September 12, 1948; that each such amount to bear interest at the rate of 6% per annum from its due date on the 12th of each succeeding month." It further orders, adjudges and decrees that petitioner "shall recover the sum of $200.00 per month in the future on the 12th day of each month beginning May 12, 1949, and each such payment shall bear 6% per annum interest from its due date, such future payments to continue and to be due plaintiff until he is restored to his former status in the Police Department, after which he shall recover such compensation as he is entitled to under the law, and in accordance with his seniority as prescribed by the Civil Service Law, and until his service with the Police Department of the City of San Antonio shall be terminated in a lawful manner prescribed by law."

We know of no authority for the rendition of a judgment like that of the trial court in this case, which after the date of its rendition increases in amount each month for an indefinite time.

■ Moreover, petitioner makes the objection that the part of the judgment which awards recovery in the future is not supported by the pleadings. This objection is well taken. The petition, in so far as it relates to the recovery of salary or wages, seeks recovery of $200.00 per month only up to the time of the judgment, or the date of the judgment, and not thereafter. Rule 301, Texas Rules of Civil Procedure, in the same language as that used in Article 2211 of the Revised Civil Statutes of 1925, provides that "The judgments of the Court shall conform to the pleadings". See Starr v. Ferguson, 140 Tex. 80, 166 S.W.2d 130. It is true that Rule 301 is somewhat limited by Rule 67, which provides that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." See Bednarz v. State, 142 Tex. 138, 176 S.W. 562; 24 Texas Law Review, p. 393. In this case, however, there is nothing in the record suggesting that there was either express or implied consent to try an issue or question as to the recovery of wages or salary after the rendition of the judgment.

The judgment of the Court of Civil Appeals is reversed. The judgment of the district court is reformed so as to eliminate therefrom the recital that the plaintiff is entitled to recover the sum of $200.00 per month in the future until his service in the Police Department is terminated, and also to eliminate all that part of the judgment last above quoted which orders and adjudges that the plaintiff shall recover the sum of $200.00 per month in the future beginning May 12, 1949, etc. The judgment of the district court as thus reformed is affirmed.