**Richard B. COLLINS, Appellant,**

**v.**

**BOARD OF FIREMEN, POLICEMEN AND FIRE ALARM OPERATORS' PENSION FUND TRUSTEES OF SAN ANTONIO, Texas, et al., Appellees.**

**No. 3344.**

Court of Civil Appeals of Texas.

Waco.

May 3, 1956.

Rehearing Denied May 31, 1956.

Joe Burkett, Walter J. Madalinski, San Antonio, for appellant.

Carlos C. Cadena, City Atty., G. Bert Smith, Jr., Asst. City Atty., Adrian A. Spears, James E. Barlow, San Antonio, for appellees.

McDONALD, Chief Justice.

This is a summary judgment case. Parties will be referred to as in the Trial Court. Plaintiff applied to the defendant Board of Firemen, Policemen, etc. Pension Fund Trustees for a pension, as a policeman, under Article 6243f R.C.S., Vernon's Ann.Civ.St., on the ground that he had permanent disabilities and injuries which had incapacitated him for 90 days or more. The Board denied plaintiff such pension. Plaintiff thereupon filed suit in the District Court of Bexar County, alleging that the Board's action was arbitrary and unreasonable; he set up fully his injuries and prayed that he be awarded a writ of mandamus against defendant Board requiring them to pay such pension.

Defendants filed a motion for summary judgment, together with affidavits and the deposition of plaintiff, alleging that there was no genuine issue as to any material fact in such cause. Plaintiff filed sworn controverting affidavits. The Trial Court upon hearing rendered *summary judgment* that plaintiff take nothing. Plaintiff appeals, contending that the summary judgment was improperly granted, there being a disputed issue of fact raised by the pleadings, affidavits and evidence introduced in the case.

The record before us, comprised of the pleadings, affidavits and evidence, reflects that plaintiff entered the San Antonio police department in *December 1945*. On *10 August 1948* he wrote, signed and delivered a letter to Fred Palmer, Chief of Police, reading:

> "Dear Sir:
>
> "I hereby tender my resignation, effective this date, August 10, 1948 * * *"

On *11 August 1948* the Chief of Police wrote the Fire and Police Civil Service Board that plaintiff had resigned and requested that his vacancy be filled from the eligibility list as soon as possible. On 12 August 1948 the Fire and Police Commissioner advised the City Auditor of Plaintiff's resignation and to re-deposit plaintiff's check for the first half of August. Only *335* policemen were authorized for San Antonio at this time. One Joe R. Garcia was on the list of eligibles at this time. One Joe Garcia was appointed to the police force on *17 August 1948*, and defendant asserts that the only possible vacancy to be filled was that created by the resignation of plaintiff on *10 August 1948*. The police payroll sheet for 15 August shows plain-

tiff's name deleted in pen and ink with the notation *"Resigned 8/10/48, Pd. on Supp"*. It also shows in addition in pen and ink the addition of the name of Joe Garcia, but that no pay was due him at that time. On the 15 September payroll plaintiff's name does not appear, and Garcia's name was typed into its proper alphabetical position.

After delivering the letter of resignation to Chief Palmer, plaintiff turned in his police equipment and went to work for a new employer. About two weeks later plaintiff contacted Chief Palmer and requested that his resignation be changed to a leave of absence. Chief Palmer told him to come back in a few days and he would see what he could do. Plaintiff talked further with Chief Palmer, with the Fire and Police Commissioner, and with the Mayor, who told him that he could go back to work as a policeman and that his resignation would be treated as a leave of absence. Plaintiff went back to work as a policeman on *16 October 1948*. On *26 October 1948* the Chief of Police sent the following letter to Police Commissioner South, with copies to Lt. Peters and the Civil Service Board:

> "Re R. B. Collins' re-employment.
>
> "R. B. Collins, *who has returned from leave of absence*, has been re-employed effective October 16, 1948, and will report to Capt. Dunaway for assignment. Collins' salary will be $200 a month."

Plaintiff continued on the job as a policeman from *16 October 1948*; drew pay as such; and paid his pension dues into the pension fund, until he became disabled on *14 June 1953*.

On 16 October 1948 plaintiff was not on the "list of eligibles" from which appointments were made to the police department, nor did he take an examination as required of new appointees.

The defendants' contention on the foregoing facts is that before plaintiff requested that his resignation be changed to a leave of absence, the Mayor had been advised of his resignation, a request had been made for the filling of his vacancy, and Joe Garcia had been appointed to fill the vacancy effective *17 August 1948*. Defendants further contend that the question as to whether plaintiff's resignation was accepted before he requested that it be changed to a leave of absence is one of law rather than of fact; that since plaintiff did not take an examination, nor was he employed on 16 October 1948 from the list of eligibles, that he was not a de jure officer but only a de facto officer, and that as such he was not entitled to share in the pension fund, no matter how long he may have served in the police department.

The plaintiff contends that his resignation was changed to a leave of absence, that such resignation was never accepted by the Chief of Police or the Mayor as such, and that the resignation never became effective and that he never relinquished his rights as a police officer; that his resignation was *"treated"* as a leave of absence by the Chief of Police, Police Commissioner and the Mayor, for which reason it was not necessary for him to take another examination or have his name on the eligibility list.

Upon the foregoing record the Trial Court rendered summary judgment holding as a matter of law that plaintiff's resignation was accepted and that he was not an officer of the San Antonio police department on 14 June 1953 as would entitle him to participation in the pension fund.

The dominant question in this case is: Does the record show as a matter of law that plaintiff's resignation was in fact accepted; or is there an issue of fact raised by the record as to whether the resignation was or was not accepted.

The case of Davis v. Peters, Tex.Civ.App., 224 S.W.2d 490, 494, W.Ref., is here applicable and says:

> "* * * Article 1269m Section 10 [, R.C.S.] provides as follows: 'When a vacancy occurs in the * * * Police Department * * * the Police Chief * * * shall request in writing from the Commission the names of

suitable persons from the eligibility list, and the Director shall certify to the chief executive of said city, the names of three (3) persons having the highest grades on the eligibility list, and the said chief executive shall thereupon make an appointment from said three (3) names.' * * *

"It is apparent from this statute that the power to appoint members of the Police Department is vested in the chief executive of the city, who is the mayor. The Civil Service Commission is required to certify to the mayor the names of those who are eligible * * * but it does not have the power to make the appointment. * * *"

Our Supreme Court, in Sawyer v. City of San Antonio, 149 Tex. 408, 234 S.W.2d 398, 401, has said:

"Policemen are public officers. * * * the resignation of a public officer is not complete until it is accepted by the proper authority, that is, by the person who is authorized to fill the vacancy. * * * Acceptance of a resignation may be evidenced either by a formal declaration 'or by something tantamount to an acceptance, such as the appointment of a successor'. * * * Since acceptance is necessary to the completion of a resignation, the resigning officer may withdraw his resignation before it has been accepted by the proper authority. * * * It is unimportant that a resignation was addressed to the Chief of Police, and if before it was withdrawn or retracted it had been called to the attention of the Mayor and had been accepted by the Mayor, it would thereby have been effective. * * *"

The Davis v. Peters case, supra, further says of Article 6243 R.C.S. (the Firemen's and Policemen's Pension Act under which plaintiff brought this suit):

"The purpose of the Act is to provide a pension plan for the type of city employee named. This purpose should not be defeated by a narrow and technical construction of the Act. On the contrary, a liberal broad interpretation of the Act should be indulged to accomplish the end sought to be attained."

This brings us to an examination of our Summary Judgment Act and our courts' construction of its application:

Rule 166-A, T.R.C.P. provides for summary judgment.

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that * * * *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*"

Our Supreme Court, in Gulbenkian v. Penn., 151 Tex. 412, 252 S.W.2d 929, 931, in discussing this rule, says:

*"The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. * * * 'The underlying purpose of Rule 166-A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' The burden of proving that there is no genuine issue of any material fact is upon the movant, and 'all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.' * * * [The court] accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position.'"*

The foregoing authorities hold:

1) The Mayor is charged with the acceptance of resignations from policemen, and with the filling of vacancies in the police department.

2) The Mayor can accept a resignation by formal declaration, or by appointing a successor for the officer tendering resignation.

3) Since acceptance of a resignation is necessary to its completion, it may be withdrawn before it has been accepted.

4) Article 6243 R.C.S., the Firemen's and Policemen's Pension Act, should be given a liberal, broad interpretation.

5) On appeal from a summary judgment, all pleadings and evidence of the party opposing the judgment will be taken as true, together with every reasonable inference in his favor. All doubts are resolved against the party for whom the judgment was rendered as to the existence of an issuable fact.

There is no contention that the Mayor ever by formal declaration accepted the resignation tendered by plaintiff, only the contention that such resignation was accepted by the Mayor by the appointment of a successor. As we view this record, there is no showing that the *Mayor* made an appointment of anyone to fill the alleged vacancy of plaintiff; no showing that the Joe Garcia who came on the police force was the same as the Joe R. Garcia on the eligibility roster; no showing that Joe Garcia took plaintiff's place. Defendant itself says in its brief:

> "If 335 positions were filled on August 6, 1948 * * *, and the same 335 positions * * * were filled on August 17, 1948, by the same people (except for the elimination of plaintiff and the inclusion of Garcia), when Garcia reported, then the only logical and reasonable conclusion to be reached is that Garcia took the position which plaintiff vacated."

The most that can be said of defendants' evidence is that it tends to establish by circumstantial evidence that which defendants contend.

Plaintiff's pleadings and evidence are to the effect that his resignation was withdrawn before it was accepted; that it was treated as a leave of absence. Plaintiff talked with the Chief of Police *and the Mayor*, who told him to go back to work. The Chief of Police's letter to the Police Commissioner stating that plaintiff had returned to work from leave of absence within itself makes for an issue of fact on whether *plaintiff's place had been filled by the Mayor.*

Defendants' evidence is all circumstantial and in our view does not, taken by itself, *lead to a reasonable and moral certainty, excluding every other reasonable hypothesis, that the resignation of plaintiff was accepted.*

Applying the rules of law announced to the record in this case, we hold that there is here presented an issuable fact as to whether plaintiff's resignation was accepted by the Mayor. Moreover, since the plaintiff's contended for rights are under the policemen's pension plan, which our courts have held must be liberally construed, we think that plaintiff is entitled to a fully developed factual situation, before such are denied.

Defendants, by cross points, contend for an affirmance of the summary judgment for two further reasons: 1) That the action of the Pension Board was reasonably supported by substantial evidence. 2) That the Pension Board's action was neither arbitrary nor unreasonable. A portion of the evidence before the Pension Board was attached to the motion for summary judgment by way of affidavits. This evidence tended to show the extent of plaintiff's injuries and disabilities. We think plaintiff's pleadings make for an issuable fact on these matters. Defendants' cross points are therefore overruled.

It follows that the judgment of the Trial Court is reversed and remanded.