**VAN HORN IRRIGATED FARMS, Inc.,**
Appellant,

v.

**Don LEONARD, Appellee.**

No. 5206.

Court of Civil Appeals of Texas.

El Paso.

Oct. 31, 1956.

H. O. Metcalfe, Marfa, Bill L. Holland, San Angelo, W. C. Peticolas, El Paso, for appellant.

Hill D. Hudson, Pecos, for appellee.

FRASER, Justice.

Don Leonard, plaintiff and appellee, sued the Van Horn Irrigated Farms, Inc., defendant, appellant, for alleged breach of a lease contract covering 528 acres of land in Culberson County, Texas. The case was tried to a jury, and resulted in a judgment against appellant for $16,900.

Plaintiff alleged that on or about February 1, 1954, plaintiff and defendant entered into an oral agreement for the lease of the farm in question for the crop year of 1954; that by the terms of such agreement defendant agreed that the pumps and motors on the two water wells would be in good operating condition at the time the farm was delivered to plaintiff; that at the time of the entry into the contract and at the time of delivery of the premises to plaintiff, the Diesel motor on the west well was not in good operating condition, and that although defendant's agent promised plaintiff that such motor would be repaired and replaced at defendant's cost, defendant failed to repair or replace said motor and that plaintiff was thereby compelled to expend the sum of $500; also that plaintiff lost the use of the west well as a proximate result of the condition of the motor, and that such resulted in a small cotton crop and a small crop of maize; that the pump on the east well was exchanged by defendant without the consent of plaintiff and that said replacement pump pumped a substantially lesser amount of water than the original pump, and that this replacing of the pump resulted in a smaller crop of cotton and a smaller crop of maize.

Defendant answered and pled a written memorandum which it claimed was the sole contract, and that there was no actual oral contract and no ambiguity in the written one, and pled that the manner of plaintiff's operation of the farm caused the shortage of the crop, accusing plaintiff of not farming said land in a good and workmanlike manner, and failing to timely plant and cultivate the crop.

Plaintiff pled that the written instrument pled and offered by the defendant was only a memorandum of the oral contract previously entered into between the parties, and by trial amendment pled in the alternative that in any event the written memorandum was vague and ambiguous in that it referred to only one well and one pump when there were two wells and two pumps on the property, and is vague about the time that the pumps were to be in good operating condition.

The jury answered the issues favorable to plaintiff, and the trial court accordingly entered its judgment thereon.

Appellant's first four points are based on the refusal of the trial court to submit requested issues 1 and 2 with explanatory instructions, and to the court's overruling of defendant's objections to the court's charge, which objections charge error because the court did not expressly limit with its definition under issues submitted what the jury might take into consideration. The issues as submitted inquired if the jury found that the loss of the use, if any, of the west well, resulted in the production of a smaller crop of cotton on the farm. Subsequent issues related to the crop of maize. Another issue inquired if the replacement pump on the east well pumped substantially less water than the original pump, and if such resulted in a smaller crop of cotton and a smaller crop of maize. Defendant's objections are that the court should have limited the jury to the consideration of only those elements of crop loss that were proximately caused by the failure of the motor on the west well and the replacement of the pump on the

east well, and should have instructed the jury not to consider any crop production losses that might have resulted from failure to farm properly, improper cultivation, etc. Defendant further argues that the court should have, in view of his pleadings and evidence, submitted proper issues as to whether plaintiff had improperly farmed, cultivated, etc., and if so the amount of crop production loss occasioned thereby.

 We believe that these first four points of appellant are well taken and must be sustained. It is clear that the reasoning in State v. Schlick, 149 Tex. 410, 179 S.W.2d 246, controls in the present situation. The Supreme Court in the Schlick case pointed out that a litigant is entitled to have all issues, pleaded and raised by the evidence, affirmatively presented to the jury, and specifically held that a finding on the respondents' issues was not sufficient as a finding on petitioner's issues which were not submitted. The Supreme Court in this same case also makes specific mention that it had before it the charge given in State v. Malone, Tex.Civ.App., 168 S.W.2d 292, and that such charge explicitly instructed the jury not to include damages to Malone's farm which may have been due to some cause other than the highway embankment. The court then says, in the Schlick case [149 Tex. 410, 179 S.W.2d 249]:

"* * * In other words, what should have been done here was done there."

Therefore, it is clear that if defendant in the instant case affirmatively pleaded and raised by evidence the issues that other elements may have contributed to plaintiff's loss, then the jury should have been appropriately charged and instructed. The defendant's pleadings do charge plaintiff with improper farming, cultivation, etc. There is evidence by T. F. Griffin that the land should have been deep plowed, and that his examination indicated that the roots had not been able to go straight down, as cotton roots should; that most of the farm leased by plaintiff had hard pan under it. Mr.

Griffin also testified that he thought the plaintiff was late in getting the weeds and voluntary maize cultivated out of the crop. Plaintiff testified that he was slowed up a few days in planting by rain. Mr. Griffin also testified that plaintiff used only $15 worth of fertilizer per acre, whereas farmers who were producing two bales to the acre were using $20 worth. We think, under the holding in the Schlick case, that defendant by his pleadings and evidence had entitled himself to have appropriate issues submitted inquiring whether other factors than the failure of the motor on one well and the replacement of the pump on the other well had contributed to the loss of crop production, and that the court should have instructed the jury to exclude from their consideration all other factors when deliberating upon the issues as submitted, which issues inquired about the loss of crops due to the failure of the motor and pump. Chicago R. I. & G. Ry. v. Martin, Tex.Civ.App., 37 S.W.2d 207.

■ Appellant's points 5 through 13 deal with the court's manner in submitting the issues relating to the amount of damage caused to plaintiff by reduction in crop production. In these points appellant urges that because there was an arroyo dividing the farm into the east and west plots, and that each had to depend on its own well because water from the east well could not be conveyed to the west side, and vice versa, that the matter of damage should have been submitted separately, that is, the amount of damage, if any, caused by the replacement of the pump on the east well to the crop on the east side of the arroyo, and loss of crop production, if any, suffered by plaintiff on the west side of the arroyo due to the failure of the motor in the west well. The court submitted the issues of damage treating the crop as an entirety over the entire farm as leased. For example, issue No. 9 states as follows:

"Do you find, from a preponderance of the evidence, that the loss of the use of such west well, if any, proxi-

mately resulted in the production of a smaller crop of cotton upon said farm?"

Similar issues were submitted inquiring about the loss, if any, to the crop of maize, as well as corresponding issues, relating to the west well.

We do not think these points are well taken. The farm was leased as an entirety, and treated as such in the negotiations between the parties, including the written instrument signed by the parties and offered by the defendant, and in the oral agreement presented by the plaintiff. The allegations of crop loss are similarly pleaded. The failure of the crop was treated as an entirety, as well as the amount of poison and fertilizer used in cultivation. The value of the crops plaintiff produced was testified to and treated as an entirety. We think the issues as submitted by the court were correct inquires as to the amount of loss, if any, suffered by plaintiff. These points are accordingly overruled.

■ Appellant's 14th point alleges error by the trial court in overruling his motion for an instructed verdict. We have examined the record in the case and do not find that the court committed error in refusing to instruct a verdict for the defendant. This point is therefore overruled.

■ Appellant's 15th point asserts that the trial court committed error in permitting the case to be tried on the theory that there might have been a prior oral agreement between the parties, and that the written instrument attached to plaintiff's pleading was a memorandum thereof, or only a part of the entire contract, and in the alternative that said written contract is vague and ambiguous.

Plaintiff pled and introduced evidence to the effect that one Culp, agent for the defendant, and plaintiff had entered into an oral agreement about February 1, 1954, relative to plaintiff's farming the land in question, and that plaintiff entered into possession of said land during said month

of February, 1954. All this took place before the written instrument, which is dated March 25, 1954. Examination of the record reveals testimony to support plaintiff's position that he and defendant's agent had reached a definite decision and agreement orally before March 25th. Defendant's agent, Culp, testified to conversations to that effect and to the details thereof, as did plaintiff and other witnesses. As to the alternate plea of ambiguity, the written instrument says as follows:

"The well and pump will be in good operating condition upon this lease."

There were, of course, two wells involved, and it is not clear as to the time element involved in the above statement, as is occurs in a paragraph dealing with plaintiff's responsibility for the pumping equipment and motors.

■ It has been held that matters preliminary to a written contract or instrument must be considered in the light of the intention of the parties, as determined from the language used and the attendant circumstances, in order to determine whether they are merely preliminary negotiations or are a part of the actual contract. This is a question of law where the court seeks to ascertain the intention of the parties to be determined from attendant circumstances, as well as the language used.

■ It has also been held that a contract may be partly oral and partly in writing. This of course again depends on the surrounding circumstances of the particular situation involved, as well as the language used in order to determine the intention of the parties. The ultimate purpose of the court should be to arrive at the real intention of the parties to the contract, and to accordingly give force to such intention. Here it is evident that plaintiff went upon the land and was working same a month or more before this written instrument was presented to him. It does not seem credible that he would have entered the land and started spending money without an agreement of some sort, nor does it seem credible in the normal course of business that defendant would have permitted him to do so. In the light of the testimony, as evidenced by the record, we think there was ample evidence to warrant the court in trying the case as it did, and in submitting special issues thereupon. The jury, in answering the issues, found from a preponderance of the evidence that there was an oral contract. We think the matter of whether or not the written memorandum was the entire contract and that all preliminary matters were mere negotiations, or contra, was correctly decided by the court and properly submitted to the jury. As to ambiguity, it has long been held that parol evidence may be admitted to explain such ambiguity. In Curry v. Texas Company, Tex.Civ.App., 8 S.W.2d 206 the court stated that the rule (that a written contract cannot be changed or explained by parol evidence) should not be permitted to defeat an intention and understanding which can be clearly proven by parol, where the contract is not clearly unambiguous. Therefore, in view of the attendant circumstances and the wording of the written instrument itself, we hold that the court was correct in his ruling and in submitting the matter to the jury. Appellant's 15th point is therefore overruled. Hegar v. Tucker, Tex.Civ. App., 274 S.W.2d 752.

The case of C. A. Bryant Co. v. Hamlin Independent School District Tex.Com.App., 118 Tex. 255, 14 S.W.2d 53, is authority for the statement that a contract may be partly oral and partly in writing under proper circumstances.

Because of the errors set forth in appellant's first four points this case must be reversed. It is therefore reversed, and remanded to the trial court for a new trial.