**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY OF TEXAS, Appellant,**

v.

**Ben TAUB, Appellee.**

No. 13680.

Court of Civil Appeals of Texas.

Houston.

April 6, 1961.

Wm. A. Thie, Gen. Counsel, Denison, Vinson, Elkins, Weems & Searls, Dave

McNeill, Jr., Ben H. Rice, III, Houston, for appellant.

Fountain, Cox & Gaines, Joyce Cox, Houston, for appellee.

WERLEIN, Justice.

This is an appeal from a summary judgment awarding to appellee (plaintiff below) the title and possession of certain tracts of land out of the John Austin Two League Grant in Houston, Harris County, Texas, designated as Tracts A, B, C, D, E, F, and G, as described in a deed from appellee to C. V. Jarrell and also in a deed from C. V. Jarrell to appellant.

Appellee, Ben Taub, conveyed said property to C. V. Jarrell for railroad purposes and Jarrell then immediately conveyed the same to appellant. It was the agreement of said parties that title to the property would revert to appellee unless certain railroad tracks were constructed by appellant within one year. Only one such track was ever built. The deed from C. V. Jarrell to appellant dated July 29, 1930, contains the following provisions:

"To have and to hold the above described property for main lead tracks, branch lead tracks, team tracks and any and all purposes incident to or pertaining to railroad purposes or business unto the said Missouri-Kansas-Texas Railroad Company of Texas, its successors and assigns forever, and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises, property and improvements unto the said Missouri-Kansas-Texas Railroad Company of Texas, its successors and assigns against all persons whomsoever lawfully claiming or to claim the same or any part thereof. It is expressly stipulated and understood that as part of the consideration for this conveyance the Missouri-Kansas-Texas Railroad Company of Texas, contracts, binds and obligates itself that it will within one year from the date

of this deed construct its main lead tracks over that portion of the herein conveyed property intended and designed for main lead track purposes by it and that failure so to do shall and will automatically work and operate a forfeiture of any and all rights of said Railroad Company in and to the herein conveyed property and said Railroad Company will have no further right or interest in or control of the herein conveyed property. All tracks of said Railroad Company and any other improvement of said Railroad Company to be placed upon the herein conveyed property by said Company when and as needed."

The deed from Ben Taub to Jarrell contains substantially the same provisions as hereinabove recited. C. V. Jarrell is not a party to this action. In 1934 he executed an instrument releasing appellant from the obligation contained in his deed, so far as he legally could, but not releasing it from any obligation to appellee. In such instrument he expressly referred to the main lead tracks which were to be constructed over the property within a certain period and stated that he had no further interest in the property and that the retention of the time provision with regard to the construction of said main lead tracks was for the use and benefit of appellee.

According to the record, in 1931 appellant constructed 949.5 feet of lead track from the main line to the property in controversy at a cost of $23,554, and in 1936 at a cost of $27,135.14 it constructed an additional 1,847 feet of track from the lead track to serve the Kraft-Phenix Cheese Company. Over the years between 1935 and 1953, appellee executed and acknowledged numerous extension agreements extending the time within which appellant could construct "such additional track," and providing that failure to construct the same within the period provided in the agreement would automatically work and operate a forfeiture of any and all rights of appellant in and to said property.

Motion for summary judgment was based on said deeds and 35 extension agreements, together with the affidavits of appellee, C. V. Basquette, Jr. and Henry J. N. Taub.

It is appellant's contention that appellee's affidavits and exhibits, as a matter of law, do not show a right in appellee to recover the tracts of land in question. Appellant further contends that it complied with its obligation to build main lead tracks, so that even if the provision upon which appellee relies for forfeiture could be effective, such condition was satisfied, and further that if there can be any dispute as to the meaning of the provision relied on by appellee and of performance, a fact issue is presented.

■ Appellant has withdrawn its First Point of Error in which it contended that appellee, as a stranger to the deed from C. V. Jarrell to appellant, could not assert a right of re-entry for a breach of the provisions of such deed. Since the decision in Perry v. Smith, Tex.Com.App. 1921, 231 S.W. 340, our courts have consistently held that a right of re-entry for a condition broken may be taken advantage of by other than the grantor, his heirs or successors.

The testimony is uncontroverted that appellant never constructed any main lead tracks subsequent to the one track hereinabove referred to. We think that the situation following the construction of such lead track is clearly reflected by the extension contract of November 17, 1935, as follows:

"I have by written agreements heretofore extended the time within which you, as assignee of C. V. Jarrell, are required to construct certain main lead tracks described in that certain deed executed by me to C. V. Jarrell dated July 29th., 1930, and under the terms of the last of such agreements the time within which you were required to construct such tracks was extended to November 30th, 1935, You have now constructed one of said tracks and I have agreed and here now agree for a consideration of $1.00 to me paid, to extend the time within which such additional track shall be constructed for a period of one year from and after November 30th, 1935. In event of your failure to construct such additional track within said period of one year such failure shall automatically work and operate a forfeiture of any and all rights which you have in and to the property conveyed to you by the said C. V. Jarrell by the Deed above referred to."

■ In said extension agreement and in the subsequent extension agreements, appellant was required to construct an additional main lead track or tracks. In such agreements, which were solicited by appellant and by it placed of record, appellant clearly evidenced its understanding that it had not fulfilled its obligation and that it was required to construct at least one additional main lead track as a condition to retaining the property in question. It took advantage of the provisions in said extension agreements in delaying the construction of such additional main lead track. It is bound by the recitals and agreements contained in said deeds and in such extension contracts under which it claims. Greene v. White, 1941, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626.

■ It is appellant's contention that the provision in the deed providing for an automatic forfeiture for failure to "construct main lead tracks over that portion of the herein conveyed property intended and designed for main lead track purposes * * * when and as needed," is too vague and indefinite to create a valid condition or to work a forfeiture, and that the court therefore erred in granting the summary judgment in favor of appellee. It is our view that the last sentence of the forfeiture clause which includes the phrase "when and as needed," does not relieve appellant from its binding obligation to construct within one year from the date of the deed

its main lead tracks over that portion of the conveyed property intended and designed by it therefor. The deed refers not only to the main lead tracks but also to other tracks. Such other tracks may be constructed as and when needed since they are not the main lead tracks which the forfeiture clause specifically requires to be constructed within one year.

It is true that the provision in the deed and extension agreements does not specifically point out where such additional lead track or tracks should be constructed, but it does specifically call for the construction of main lead tracks, and only one main lead track was constructed. If there was in fact a breach of the condition that an additional main lead track had to be constructed by appellant to avoid a forfeiture of the property, it would seem immaterial as to where on the property it was constructed so long as it was in fact constructed by appellant over a portion of the property. Each and every one of the 35 extension agreements solicited by appellant and placed of record by it constitutes an admission by appellant that it had not complied with the condition provided in the deed and that it would be in default and its property would be forfeited if it did not build an additional main lead track within the extended time as provided in the extension agreements.

The deed requires appellant to construct main lead tracks over that portion of the property intended and designed for main lead track purposes. Although there is nothing to show definitely the tracks intended and designed for main lead track purposes, the deeds and the extension agreements clearly evidence that there were tracts available and designed for at least one additional main lead track. This much was admitted by appellant every time it solicited and recorded an extension agreement.

There is nothing in the record to show that any obligation was imposed upon appellee with respect to the development of the property for industrial purposes or that he did or failed to do anything that would prevent him from declaring a forfeiture upon appellant's default. Appellee stated in his affidavit that a main consideration for the original grant and the extensions was that the building of the leads, as agreed, would attract industry. He further stated:

"Industry generally follows availability of transportation. Industry is seldom established in the hope that transportation will come to it.

"The railroad representatives were at all times acquainted with the nature of the land.

"I have never bound myself to accept any particular price for my land adjacent to the land in question. I was always interested in seeing my land developed, was never uncooperative, but never had the opportunity to negotiate with purchasers and show them the constructed railroad leads which the railroad had contracted to build.

"Had the Railroad built as it agreed, my lands would have greatly increased in value.

"In 1954 when I refused further extensions, I had no knowledge of any proposed freeway which would cross any part of my lands.

"The City never established any building lines which would have prevented full compliance with the Railroads obligation."

Appellant also contends that in 1953 or early part of 1954, the Texas State Highway Department decided to use substantially all of the lands in controversy for right of way for future freeway development. In the affidavit of Preston M. Hays, appellant's witness, it is stated that in 1953 or early 1954 he became aware of the plans of the Highway Department to use substantially all of the Taub tract for right

of way for future freeway development, and that he had gone to the office of the State Highway Department and seen the preliminary plans they had at that time. He reported the same to his superiors at Dallas along with his opinion that the freeway program made any future hope for the industrial development of the Taub lands an impossibility. He further stated that it was his recollection that following the normal procedure in relation to future freeway rights of way, the State requested the City of Houston to establish protective building lines for the right of way they anticipated needing in the future, and the effect of such action by the City would make it impossible to secure a building permit to erect any sort of structure on the Taub lands within the freeway right of way.

Mr. Taub's testimony is uncontroverted that in 1954 when he refused any further extensions he had absolutely no knowledge of any proposed freeway which would cross any part of his said lands. He also testified that the City never established any building lines which would have prevented full compliance with the railroad's obligation.

The foregoing statement of Hays amounts to no more than mere surmise and conjecture on his part that at some future time some part of the Taub property might be condemned for future highway development. There is nothing in the record to show that any part of such land had been condemned or ever would be condemned.

Resolving all doubts in favor of appellant and against appellee, we have concluded that there is no genuine issue of a material fact in the case. Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, ref., n. r. e.; Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929.

Appellant asks us to take judicial notice of the fact that on March 4, 1960 the State Highway Commission of Texas instituted proceedings in the County Court at Law of Harris County, Texas, to condemn the land in question and that on May 16, 1960, which was after judgment was entered in the present suit, the Commission condemned the land and made an award. The law is well established that we cannot take judicial notice of proceedings or records in other cases and courts. Employers' Casualty Co. v. Smith, Tex.Civ.App., 284 S.W. 991; Pfeffer v. Mahnke, Tex.Com. App.1924, 260 S.W. 1031; Poole v. Pierce-Fordyce Oil Ass'n, Tex.Civ.App., 209 S.W. 706; McCormick and Ray, Texas Law of Evidence, § 186, p. 206.

The last extension agreement was executed December 10, 1953, and gave appellant six months from December 1, 1953 to construct such additional main lead track. It specifically provided that failure to do so within such period of six months would automatically work and operate a forfeiture of any and all rights which appellant had in the property in question. We find nothing in the record rendering performance impossible or excusing appellant from performing. Even if we could take judicial notice of condemnation of the land on May 16, 1960, some six years subsequent to the forfeiture, as appellant requests us to do in its post-submission motion, we fail to see how appellant could in any way be benefited thereby.

Appellant asserts that the judgment is fundamentally erroneous in that it awards Tracts A through G described in the Taub deed when the plaintiff in his petition sought to recover only Tracts A through F. The judgment grants recovery to appellee of the lands described in the deed from Taub to Jarrell and makes reference to such deed for description. Appellee's motion for summary judgment also alleges that appellee's suit is to recover the lands described in said deed. The case was tried and argued upon the basis that all the lands described in said deed were in issue, and the sufficiency of appellee's pleading is raised for the first time on this appeal. Appellant at no time directed the

court's attention by proper motion or exception to the variance between the descriptions in appellee's petition and its motion for summary judgment and the evidence. We are of the opinion that the issue was tried by implied consent of the parties. Rules 67 and 90, Texas Rules of Civil Procedure; McDonald, Texas Civil Practice, Vol. 2, Sec. 5.18, pp. 513–522; Bednarz v. State, 1944, 142 Tex. 138, 176 S.W.2d 562; Sawyer v. City of San Antonio, 1950, 149 Tex. 408, 234 S.W.2d 398, at page 403.

Judgment affirmed.