## C. H. LANGDEAU, RECEIVER, V. M. A. BOUKNIGHT

No. A-7826. Decided March 1, 1961
Rehearing overruled April 5, 1961
(344 S. W. 2d Series 435)

43

*Cecil C. Rotsch, A. M. LeCroix, Norman V. Saurez* and *Harold G. Kennedy,* all of Austin, for Petitioner Langdeau.

*Marvin Schulman,* of Houston, for Bouknight, respondent.

MRS JUSTICE GRIFFIN delivered the opinion of the Court.

In this cause petitioner, Langdeau, as plaintiff, sued respondent, Bouknight, as defendant, for recovery of premiums and unearned commissions alleged due by Bouknight to Langdeau as Receiver of U. S. Trust & Guaranty Company for policies written by Bouknight in the Trust & Guaranty Company prior to its being placed in receivership. Langdeau also sued for attorney's fees under Art. 2226, Vernon's Annotated Civil Statutes, verifying his petition, thus claiming his suit was upon a sworn account as set out under Art. 2226.

The case was tried before the court without a jury, and judgment was rendered against Bouknight for the amounts sued for, plus $1,200.00 attorney's fees.

Bouknight appealed to the Court of Civil Appeals. That Court concluded that Bouknight was liable for the unearned commissions and the earned premiums on policies written by Bouknight, whether collected by him or not, and all premiums collected by him prior to the cancellation of the policy and not forwarded to the Company, less earned commissions. That Court

reversed that part of the trial court's judgment awarding to Langdeau unearned premiums not collected by Bouknight from the policyholder, and Langdeau's recovery of attorney's fees. 333 S.W. 2d 670. Both parties applied for a writ of error to this Court. We granted Langdeau's petition, and it followed, as a matter of our practice, that we granted Bouknight's application also.

We affirm in part, and reverse and remand in part the judgment of the Court of Civil Appeals.

At the time Bouknight was employed by U. S. Trust & Guaranty Company, as agent, the parties entered into a written agency contract. On December 22, 1955, Honorable Chas. O. Betts, Judge of the 98th District Court of Travis County, on application of the State of Texas, placed the U. S. Trust & Guaranty Company in temporary receivership, and on December 23, 1955 ordered all policies of insurance cancelled as of that date. This receivership was made permanent and the Trust Company was placed in liquidation on January 31, 1956. Langdeau is the duly appointed and acting liquidator, sometimes called "Receiver" of said Trust Company.

Langdeau's suit against Bouknight involved about 235 policies which were in force on December 23, 1955, and cancelled on that date by order of the receivership court. Such policies had been written by Bouknight as agent of the Trust Company over about a three-year period prior to the Trust Company being placed in receivership. Except for approximately thirty-nine "in-force" policies written during the months of September, October, November, and December, 1955, it is undisputed that the net premiums on all other of such "in-force" policies had been paid by Bouknight to the Trust Company. As to the thirty-nine policies, they were reported in the respective monthly reports called "accounts current", to the Trust Company for the month in which each was written. In submitting such accounts current, after reporting the gross premium, credit was then taken for his full commission on such policies, a net premium balance was shown to be owed to the Trust Company totaling $1,744.35 for the months of September, October, November, and December, 1955. The Receiver's sworn account, totaling $3,707.69, was composed of two categories: (1) the net premium balance of $1,744.35 due on the thirty-nine policies which had been reported and unpaid by the agent, and (2) the sum of $1,963.34 representing unearned portion of the agent's com-

mission on all 235 policies canceled by the Receiver. It was this total amount which the trial court found Bouknight owed on his agency account.

The provisions of the agency contract are clear and unambiguous. By its terms Bouknight agreed to pay to the Trust Company within sixty days all premiums of policies written by him in the Company "whether such premiums have been collected or not, less commissions." These premiums were due for premiums on policies issued during the months of September, October, November and December, 1955, prior to the Trust Company being placed in receivership. The correctness of the items making up this total balance were not questioned, but Bouknight claimed he was liable only for the amount of the premiums he had actually collected from the policyholders and had not remitted to the Trust Company. Bouknight made no claim that he had paid any part of these amounts shown on his monthly accounts current reports.

■ After the Trust Company was placed in receivership and its policies cancelled, Bouknight reinsured some of his customers in other insurance companies, and paid the premiums on such reinsured policies out of his own funds. He had taken assignments from such policyholders of their claims against the Trust Company for these unearned premiums. All such assignments were dated after the institution of the receivership proceedings. The total of such assignments was the sum of $7,347.80. A claim for this total had been presented by Bouknight to the Receiver and had been approved by the receivership court as a general unsecured claim. Art. 21.28, Sec. 3 (g) of the Insurance Code specifically prohibits allowance of any claim on the part of any person where "the obligation of the insurer to such person was purchased by or transferred to such person subsequent to the commencement of the delinquency proceedings or with a view of its being used as an offset; * * * the obligation of such person is as a trustee or fiduciary." The agency contract herein contained provision to the effect that all monies collected by the agent for the Trust Company should be held by the agent in a fiduciary capacity until transmitted to the Trust Company. The above provision of the Insurance Code, when applied to the facts of our case, prohibits these assigned amounts from being used as an offset to Langdeau's claims against Bouknight.

Bouknight claims he is liable to Langdeau only for the payment of earned premiums collected by him and not forwarded

to the Trust Company. His reasoning for his nonliability is that upon the Trust Company's being placed in receivership, the policyholders each had a claim against the Receiver, Langdeau, for unearned premiums on their policies; that having reinsured these policyholders and having paid the premiums on such reinsurance out of his own funds, he had discharged the liability of the Trust Company to pay such unearned premiums to the policyholders, and, therefore, having made the policyholders whole, he, Bouknight, is subrogated to the rights which the policyholders had against the Trust Company in the amounts Bouknight had paid for the Trust Company in discharge of the claims of the policyholders. Stated in another way, Bouknight argues that had the Receiver sued the policyholders for any premiums on policies, Langdeau could only have recovered the earned portion of the premiums and not the unearned portion. This was by virtue of the fact that there would be a partial failure of consideration as far as the Trust Company and the policyholders are concerned due to the cancellation of the policies prior to the expiration dates, and, therefore, no insurance in force for the full time as covered by the premium. From this argument, Bouknight proceeds to argue that he is entitled to take the place of the policyholder in so far as the Trust Company is claiming premiums on any particular policy from Bouknight. By the same line of reasoning, Bouknight contends that he would not be liable to the Trust Company for any commissions which he had witheld from the unearned premiums theretofore remitted to the Trust Company. He says this would be true because the Trust Company could not collect any part of the unearned premiums from the policyholders, but the policyholders would have a claim against the Trust Company for such unearned premiums paid. These unearned premiums due the policyholders by the Trust Company would include the unearned commissions deducted by Bouknight when he remitted the premiums to the Trust Company.

■ We do not agree with Bouknight's reasoning. First and foremost, such reasoning is in direct conflict with Bouknight's obligations under his agency contract. That contract specifically provides, as applicable to unearned commissions, that "it is a condition of this agreement that the agent shall refund ratably to the company on business heretofore or hereafter written commissions on cancelled liability and on reduction in premium at the same rate at which such commissions were originally retained." As to the payment of the premiums on the policies issued by Bouknight whose premiums had not been remitted, the

agency contract provides that "the agent shall not later than 60 days from the close of the month in which such policies were effective pay to the company the premiums thereon, whether such premiums have been collected or not less commissions." Clearly these provisions of the agency contract fix Bouknight's liability to the Receiver to pay the amounts sued for by the Receiver for the two above items.

The case of Wheeler v. Metteauer, 1955, Tex. Civ. App., 283 S.W. 2d 95, 98 no writ history, was a case involving a plea of privilege filed by Wheeler in a suit against him brought by Metteauer. Metteauer alleged that he was an insurance agent, and, as such, had issued policies to certain individuals in Century Lloyds; and that because of dissatifaction with Century Lloyds because of its inability to pay claims against it, these policies were assumed by Commercial Security Insurance Company; that thereafter, and while the policies were in force, Commercial Security Insurance Company became insolvent and Wheeler was duly appointed Receiver for that Company and its policies were cancelled; that "because of the cancellation of these policies plaintiff E. Lynn Metteauer was forced to and did expend his own money to either reimburse the policyholders for unearned premiums due or to purchase for them insurance in another company" in an amount of $6,769.04. In determining the question of venue as to Metteauer's action against Wheeler, it was necessary to determine if plaintiff had made out a cause of action. The Court said:

"* * * The plaintiff Metteauer was under no legal obligation to repay to the policyholders the unearned portions of the premiums on their policies of insurance. Whether this was commendable or laudable or the meeting of a point of honor, is not the question. He was not legally liable to make said payments, and in doing so, he was a volunteer. It is hardly necessary to cite authority to support the proposition that a person who voluntarily makes payments which he is under no legal obligation to make and which he is not required to make in order to protect his legal rights has no cause of action theeron. See Stone v. Tilley, 100 Tex. 487, 101 S.W. 201, 10 L.R.A., N.S., 678, and Burkhardt v. Liberman, 138 Tex. 409, 159 S.W. 2d 847."

Evidently no writ was applied for because it was a venue case over which we would have no jurisdiction.

In the case of Eng v. Wheeler, 1957, Tex. Civ. App., 302 S.W. 2d 263, dism., w.o.j., Wheeler as receiver of General American Casualty Company, filed suit in County Court at Law No. 1, Bexar County, Texas, on a sworn account against Eng for $257.81. Wheeler alleged that Eng was agent for General American, and as such agent he had issued policies of insurance in General American, and had not remitted to the Company the premiums on said policies in the amount of $146.11, and recovery was sought for such sum. Wheeler also sought recovery against Eng for $111.70 as commissions retained by Eng on unearned premiums on policies cancelled by the receivership court on July 8, 1954. That case is a suit for recovery of the same items as that sought in the case at bar, the only difference being in the amount of each item. Eng plead a counterclaim in which he alleged he had settled with the policyholders having claims for refund of unearned premiums, taking assignments from such policyholders for these refund claims. The trial court rendered judgment for the Receiver for his claims, and against Eng on his counterclaim. In affirming the trial court's judgment, the Court of Civil Appeals said:

"* * * The contract between appellant and the insurance company expressly provided that in the event of cancellation of any policy or any refund of premiums should be due, the agent should return to the company the pro rata portion of commissions on the unearned premium due to the policyholder. Therefore, when the policies referred to in appellee's account were cancelled by court order, the return of the unearned premiums on the policies to the holders became the obligation of the appellee. And under the contract appellant became indebted to the appellee to the extent of his pro rata portion of such unearned premiums. In other words, appellee became debtor to the policyholders and the appellant became debtor to appellee, regardless of whether the policyholders had made claim for the return of such premiums or not. Appellant was under no obligation to refund the unearned premiums to the policyholders, and this action by appellant, being voluntary, created no liability on the part of appellee to him thereon. Wheeler v. Metteauer, Tex. Civ. App., 283 S. W. 2d 95, and authorities there cited."

The Court further said:

"* * * Moreover, the trial court correctly held that appellee was entitled to recover the above mentioned unearned

commissions and that, as a matter of law, under the facts in this case appellant is not entitled to recover the amount of unearned premiums he had voluntarily returned to his policyholders. That these claims constitute general claims against the receivership, to be adjusted along with other general creditors. To hold otherwise would make the holders of these claims preferred creditors."

In the case of Wheeler v. Clark, 1957, Tex. Civ. App., 306 S.W. 2d 158, wr. ref., Wheeler as receiver of General American Casualty Company sued Clark, an insurance agent for General American, for the sum of $2,589.33, alleged to be the amount of unearned commissions due by Clark to Wheeler as receiver. Clark answered seeking to offset against Wheeler's claim a sum of $8,930.78. This amount was the unearned premiums owed to Clark's customers by the General American as of date the receivership court had cancelled the policies. After the appointment of the receiver, Clark had repaid to such policyholders out of his own funds the unearned premiums due them, or had issued new policies to them in lieu of those of the defunct company. The trial court allowed the offset. The Court of Civil Appeals denied the offset and rendered judgment for Wheeler for the $2,589.33 sued for. In its opinion the Court of Civil Appeals quotes with approval from the Eng v. Wheeler case, supra, and then says:

"* * * The truth is that when the Receiver was appointed and all policies cancelled by the Travis County District Court, an indebtedness then and there was created in favor of the policyholders and against the Receiver for the amount of unearned premiums and it was the duty of the Receiver to pay to such policyholders, on a pro rata basis, these unearned premiums, and at the same time Clark became indebted to the Receiver for the total sum of unearned commissions on the policies he had theretofore written. Clark could not thereafter make himself a preferred creditor by securing an assignment of the unearned premiums from the policyholders, and pleading these sums as an offset against his own indebtedness to the Receiver. The trial court should have refused to allow the offset, and should have rendered judgment against Clark for the full amount of the unearned commissions due by him to the Receiver."

See also Arnold v. Wheeler, 1957, Tex. Civ. App., 304 S.W. 2d 368, wr. ref., n.r.e.

■ We hold that Langdeau was entitled to recover for the unearned premiums and unearned commissions in the amounts sued for, less credit for certain dividends from the receivership estate, which Langdeau is holding for Bouknight's benefit until this case shall be finally adjudicated.

Our holding above also disposes of Points of Error Nos. 16-46, both inclusive, as set out in Bouknight's application for writ of error, and we shall not further discuss these points.

We now come to Langdeau's Points of Error Nos. 3 and 4 wherein he complains of the judgment of the Court of Civil Appeals denying him a recovery under Art. 2226, Vernon's Ann. Civ. Stat., for attorney's fees. We overrule these points and agree with the Court of Civil Appeals' holding.

■ As to what is meant by "sworn account", under our holding in Meaders v. Biskamp, 1958 159 Texas 79, 316 S.W. 2d 75, Langdeau's cause of action is not founded upon a sworn account, although he verified the same. Art 2226 permits recovery of attorney's fees in certain types of action, among which is a "sworn account." It is only under this part of Art. 2226 that Langdeau seeks recovery of his attorney's fees. He does not seek recovery under any other specific heading, as "personal services rendered," "labor done", "material furnished," "overcharges on freight or express", etc., etc., as set out in the statute. The Court of Civil Appeals correctly held that under the heading "sworn account" a recovery of attorney's fees could not be had in a suit "resting upon special contracts." Recovery of attorney's fees under some of the other classifications set out in Art. 2226 might be had under a contract between the parties covering such situation, but not under the part dealing with "sworn accounts." In Biskamp v. Meaders, supra, as in this case, the plaintiff relied for recovery of attorney's fees upon the "sworn account" provision. What we there said, "it (sworn account) does not mean transaction between parties resting upon special contract" was not a holding that recovery of attorney's fees under any other provision of Art. 2226 may not rest upon a contract basis. It was simply a holding that a recovery under the "sworn account" provision cannot be had upon a special contract. In view of holding that Langdeau cannot recover attorney's fees herein, it is not necessary to discuss the question raised about a demand for payment not having been made. See also our memorandum opinion in the case of Guay v. Schneider,

Bernet & Hickman, Inc., Tex. Civ. App., 1960, 341 S.W. 2d 461. [161 Texas 560, 344 S.W. 2d 429.]

Bouknight has six points of error from 10-15, both inclusive, which have to do with the admission in evidence of certain documents. However, Bouknight has not discussed these points in his brief and argument and we hold that the Court of Civil Appeals correctly determined that no error was committed by the trial court in receiving such documents in evidence.

■ We shall discuss the complaint that Art. 21.28, §11 of the Insurance Code is a local or special law. Art. 21.28, and in particular §11 thereof, is only a small part of the code of law providing for the regulation of the insurance business, a business affected by the public interest. The emergency clause to House Bill 683, 54th Legislature, the present Art. 21.28 of the Texas Code, recites, "the fact that the present laws covering the subject material of this Act are inadequate, creates an emergency, and an imperative public necessity."

Art. 21.28, §11, applies to all insurance companies that might be placed in receivership as well as all persons who might be receivers of such insurance companies placed in receivership. It applies to the insurance business, a business affected by the public interest. A statute is not local or special although its enforcement is restricted to particular locality, if it operates on a subject in which people at large are interested. Stephenson v. Wood, 119 Texas 564, 34 S.W. 2d 246. "The situation confronting the Legislature at the time of the passage of an act is of prime importance in determining whether an act is a special or local law." Miller v. El Paso, 146 S. W. 2d 1027, reversed on other grounds, 136 Texas 370, 150 S.W. 2d 1000.

Due to the character and extent of the insurance business; the fact that it affects the public interest, and the fact that the State, acting through the Legislature, has seen fit to regulate the insurance industry in great detail; the extent of injury which can result from insolvent insurance companies doing business or liquidating except under state supervision; the enormous expense involved in unregulated liquidation and the necessity for a fair and impartial handling of liquidation in order to recover the highest possible maximum of assets for distribution to creditors and policyholders, we hold the classification of insolvent insurance company receivers separately from general receivers is a just, reasonable and fair classification which the Legislature

could make. We hold that Art. 21.28 of the Insurance Code is valid, and not subject to any of the above attacks.

As to Bouknight's claims that Art. 21.28, §11 conflicts with Rule 185, Texas Rules of Civil Procedure, and Art. 3737e (providing for admission of memoranda or records made in the regular course of business) we can see no possible way of construction that would bring about a conflict. Each has its place in the law of evidence, and to give effect to either will not nullify either of the other two. We overrule this contention.

Langdeau concedes that certain dividends in favor of Bouknight have accrued on his claim against the Receiver. The trial court can ascertain the amount of such dividends and allow them as of the date they accrued, together with interest from the date of the judgment to be calculated only on the difference between these accrued dividends and the amount Bouknight owes to Langdeau.

The judgment of the Court of Civil Apeals remanding this cause to the trial court is affirmed, but the trial court will proceed to enter judgment in acordance with this opinion.

Associate Justice Steakley not sitting.