**SOUTH TEXAS BUILDING COMPANY, a Partnership, et al., Appellants,**

v.

**IDEAL ENGINEERING, INC., Appellee.**

No. 14750.

Court of Civil Appeals of Texas.

Houston.

March 17, 1966.

Rehearing Granted in Part and in Part Overruled April 7, 1966.

Second Rehearing Overruled May 5, 1966.

Sam L. Sterrett, Jr., Houston, for appellants.

Billy B. Goldberg, Houston, for appellee.

COLEMAN, Justice.

This is a suit by a sub-contractor against the prime contractor and the owner to recover the balance due under a construction contract. The trial was to the court without a jury. No findings of fact were requested. There is no statement of facts.

The parties entered into certain stipulations of fact in the trial court, which have been included in the transcript. The judgment entered in favor of the sub-contractor recited that evidence was heard and considered.

South Texas Building Company contracted to construct for Twelve Oaks Properties a nursing home project on Lots 7, 8, 11 and 12, Block 2, Reynolds Acres Addition in Houston, Texas. Pursuant to a published invitation to bid Ideal Engineering, Inc. approached South Texas' building superintendent and discussed with him the possibility of effecting a saving on the total cost of the project, and Ideal was requested by the superintendent to submit its suggestions to the engineer employed by the owner's architect. Ideal was furnished a copy of the job specifications by South Texas.

Ideal discussed with the engineer the substitution of certain items required by the specifications, and then submitted a proposal to South Texas based on the use of the substituted items. Thereafter Ideal and South Texas entered into a contract. Among the substituted items were a cooling tower and certain pumps. These items were installed by Ideal after securing prior written approval of the engineer employed by owner's architect to which Ideal had been referred by South Texas' building superintendent.

Payments were made to Ideal by South Texas periodically. On February 10, 1964, a payment of $20,000.00 was made, leaving due under invoices previously presented the sum of $9,009.00. After this payment was received Ideal was advised by the superintendent that the F.H.A. would not approve the cooling tower and two pumps. Ideal offered to remove the tower and pumps and to substitute equipment which would be approved if South Texas would pay the additional cost of the equipment of approximately $3,000.00. This offer was rejected by South Texas.

On April 10, 1964, Ideal attempted to hook up the cooling tower and was advised by the superintendent that it could not do so and would not be permitted on the job any further since the cooling tower had been rejected by the FHA. Other than this, involving three days' work by two men, the contract, including the equipment approved by the engineer, had been completed by Ideal. On that date patients were in the nursing home. The cooling tower and pumps were subsequently put into use and were used up to the date of trial.

Ideal contends that the sum of $17,219.80 is due under the contract. On March 26, 1964, Ideal caused a lien to be filed against the property recorded in Vol. 97, page 302, Mechanics' and Materialmen's Lien Records, Harris County, Texas. There was no prayer for foreclosure of this lien in the plaintiff's petition, and no foreclosure was granted by the judgment.

The contract recites that the project was to be erected with funds obtained pursuant to a commitment from the Federal Housing Commissioner for insurance of a loan. The FHA required the removal of the tower and pumps in controversy and their replacement with different equipment. To insure that this requirement will be met South Texas has deposited with FHA the sum of $6,000.00.

Among the various provisions of the contract between Ideal and South Texas, those most pertinent to this controversy follow:

"2. The materials to be furnished and work to be done by Subcontractor hereunder are:

"A COMPLETE HEATING, VENTILATING AND AIR CONDITIONING SYSTEM IN ACCORDANCE WITH PLANS AND SPECIFICATIONS. ANY DEVIATION FROM PLANS AND SPECIFICATIONS MUST BE ACCEPTABLE TO F. H. A., ARCHITECT, ENGINEER AND OWNER.

"NOTE: INDEMNITY BOND FOR $64,000.00 REQUIRED."

"4. A Carroll Broadnax, Architect & Associates will have general supervision of the work and will have authority to stop the work if necessary to insure its proper execution. The Architect will pass on all matters pertaining to progress, compliance and completion, including but not limited to the certification of the date of final completion of the project, for all purposes set forth herein.

"6. It is specifically understood and agreed that no payment or draw shall be due under this Contract until and unless the work has theretofore satisfactorily met all inspections that may be required by the Architect, the F.H.A., the City or other governmental agency, and if any of such work shall fail to pass such inspections, Subcontractor shall remedy the defects at his expense and pay all other damages occasioned Contractor by reason thereof, in-

cluding all reinspection fees; and in the event or recurring defects or delay by Subcontractor in making defects good, Contractor may correct defects without Subcontractor's assistance and charge the expense thereof to Subcontractor and Contractor may in such case cancel this entire contract.

"12. Subcontractor guarantees a good workmanlike job according to the plans and specifications, the Architect or Owner's Superintendent, and according to F.H.A. and City specifications and requirements. Any departure from standard practices or any failure of Subcontractor to meet the Architect's requirements or any failure by Subcontractor to meet requirements of the plans and specifications, or any failure of Subcontractor to have a full crew and equipment on the job when needed, or any default by Subcontractor under the provisions of this Contract, shall give contractor the option to cancel this Contract and retain all unpaid portions thereof as liquidated damages and to recover from Subcontractor such additional damages as Contractor may suffer, and to employ others to do the work and collect therefor from Subcontractor and charge the cost thereof to the money due Subcontractor under this Contract, or any of said remedies, and Contractor shall also have all other remedies allowed in law or equity. It is especially understood and agreed that all work done hereunder shall be done with the utmost speed and that Contractor shall have perference over any and all other jobs which Subcontractor may have or hereafter take; and any failure of Subcontractor for any reason to have a full crew available when needed shall be reason for cancellation regardless of the reason for such delay."

Appellant, South Texas, contends that the trial court erred in granting judgment in that (1) there is "no indication in this record of full or substantial compliance with or performance under the terms of the contract by Ideal Engineering, Inc."; and

(2) "it affirmatively appears that Ideal Engineering, Inc. breached such contract when it failed to secure FHA approval of deviation from contractual plans and specifications."

While it is not clear whether the original plans and specifications were amended in writing, the trial court could have found that such an amendment was made with the consent of the contractor. Since it is stipulated that the work was completed in accordance with the plans and specifications (as modified with the approval of the owner prior to the execution of the sub-contract), with the exception of the connection of the water tower, a finding by the trial court that Ideal had fully performed the contract will be implied unless such a conclusion is prevented by the stipulation that FHA required that the tower and pumps be removed and substituted. Assuming that the specifications were amended, it was impossible for Ideal to completely perform the contract since performance in accordance with the amended specifications was not approved by FHA.

While it appears that to install an FHA approved water tower and pumps will cost a sum between $3,000.00 and $6,000.00, out of a total contract of $64,000.00, in the absence of a statement of facts we cannot say that Ideal failed to substantially perform the contract. We must presume in support of the judgment that the trial court found that Ideal did substantially perform and that his finding was supported by evidence introduced at the trial. Harvey v. State, Tex.Civ.App., 389 S.W.2d 692, ref., n. r. e.; Armstrong v. West Texas Rig Co., Tex. Civ.App., 339 S.W.2d 69, ref., n. r. e.

In 10 Tex.Jur.2d, Building Contracts, § 21, the text reads:

"Substantial performance is regarded as full performance, insofar as the rule that performance is a condition precedent to the right to recover on the contract is concerned; a contractor who has in good faith substantially performed may sue under the contract.

"Although substantial performance does not mean an exact performance in every slight or unimportant detail, it means a performance of all important particulars and permits only such omissions or deviations from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing; when the necessary elements are not present the doctrine is not applicable even though the work is as good or as valuable to the owner as that agreed to be done."

Paragraph 4 of the sub-contract provides that the architect shall have authority to stop the work if necessary to insure its proper execution and that he will pass on all matters pertaining to compliance and completion "for all purposes set forth herein." Appellants' pleading contained only a general denial. There is no allegation that the architect stopped the work nor that he has failed or refused to certify that the contract was completed. There is no pleading that the contract has been cancelled as authorized by the provisions heretofore quoted. Nor was there a counter-claim for damages against the sub-contractor by reason of the breach of the covenant to do the work in accordance with FHA specifications and requirements in a good, workmanlike manner, or for its failure to remedy the defects. There is no allegation that the contractor or the owner has employed others to replace the water tower or pumps.

Apparently appellants relied on that provision of paragraph 6 providing that no payment shall be due under the contract "until and unless the work has theretofore satisfactorily met all inspections that may be required by * * * the F.H.A." This paragraph further provides that the sub-contractor may correct the defects at its expense, or, in the event of delay on its part in doing so, that contractor may correct the defects charging the expense to sub-contractor, or that contractor may cancel the contract.

A consideration of the paragraph in its entirety reflects that it was not the intention of the parties that the defective condition should be permitted to remain and the contractor be authorized to withhold payment indefinitely. It was intended that the condition be corrected without undue delay either by the sub-contractor, or by the contractor, payments due the sub-contractor to be held up in the meantime, or else that the contract be cancelled. The stipulations reflect that the offer made by the sub-contractor to substitute approved equipment was conditioned on an additional payment, not specifically provided for in the contract. However thereafter the contractor refused to permit the employees of sub-contractor to come on the premises and thereby effectively denied sub-contractor an opportunity to correct the defects. Bearing in mind our duty to imply findings necessary to support the judgment of the trial court, the failure to secure FHA approval is excused since the sub-contractor may have been wrongfully prevented from correcting the defects by the contractor. 13 Amer.Jur.2d, Building and Construction Contracts, § 40.

It has been stated that there are three reasons for permitting recovery for substantial performance of a building contract. The owner of the land will necessarily receive the benefits of the contractor's labor and materials; it is next to impossible for a builder to comply literally with all the minute specifications in a building contract; and the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance. 13 Amer.Jur.2d, Building and Construction Contracts, § 41.

The above cited work states that while substantial performance is a relative term and the extent of the non-performance must be viewed in relation to the full performance promised, it may be stated generally that, "there is substantial performance of such a (building) contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract." It is further stated that "imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into the substance of the contract, and may be compensated in damages, do not prevent the performance from being regarded as substantial performance." 13 Amer.Jur. 2d, supra, § 43; Atkinson v. Jackson Bros., Tex.Com.App.1925, 270 S.W. 848, 38 A.L.R. 1377.

The record in this case does not reflect that the trial court erred in entering judgment against the contractor.

The owners, Twelve Oaks Properties and Thomas A. Anderson, Jr., have presented the point that "the record of this cause fails to reveal any duty or obligation of any kind, nature or description" owed by them, or either of them, to Ideal Engineering, Inc. Under certain circumstances Art. 5452 et seq., Vernon's Ann.Tex.Civ.St., impose a duty on the owners of property on which improvements are being constructed by a contractor, to a sub-contractor. In the absence of a statement of facts we cannot say that the trial court erred in granting appellee a judgment against these appellants.

Appellee has presented the cross-point that the trial court erred in refusing to award attorney's fees.

It was stipulated that:

"4. On December 30, 1963, Ideal submitted its invoice No. 6965 in the amount of $21,729.00 to South Texas Builders. No payment was received on this invoice in January, 1964. On January 29, 1964, Ideal submitted its Invoice No. 7207 in the amount of $7,280.00, making a total of the two invoices of $29,009.00. In the early part of February, 1964, Caplan called Asha-

branner relative to payment of this invoice and Ashabranner indicated that there had been some delay in the draw and asked if the $20,000.00 payment at that time would be satisfactory, to which Caplan agreed. On the 10th day of February, 1964, by Check No. 2435, South Texas Builders paid $20,000.00, leaving the sum of $9,009.00 unpaid. On February 24, 1964, Ideal submitted Invoice No. 7055 in the amount of $582.30. On April 10, 1964, Ideal submitted the Invoice No. 7119 in the amount of $7,-628.50, same being the balance of the contract price. The statement of invoices and payments on the job are attached hereto as Exhibit D."

This suit was filed more than thirty days after the last invoice was received by the contractor. It was stipulated that none of the $17,219.80 claimed to be due under the contract has been paid to appellee. It was also stipulated that if appellee is entitled to recover attorney's fees in this suit, a sum equal to 10% of the amount of recovery would be a fair and reasonable figure.

 Under these stipulated facts it appears that appellee has complied with the requirements of Art. 2226, V.A.T.S., and is, therefore, entitled to recover $1,810.41 as reasonable attorney's fees. Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435; Wyche v. Wichita Engineering Co., Tex. Civ.App., 374 S.W.2d 728; Ginther v. Southwest Workover Co., Tex.Civ.App., 286 S.W.2d 291; Ferrier Bros. v. Brown, Tex.Civ.App., 362 S.W.2d 181, writ ref., n. r. e. An appellee may bring cross-assignments against an appellant without perfecting an independent appeal. Dallas Electric Supply Co. v. Branum Co., 1945, 143 Tex. 366, 185 S.W.2d 427; Bowman v. Puckett, 1945, 144 Tex. 125, 188 S.W.2d 571.

The judgment of the trial court as modified is affirmed.

### On Motion for Rehearing

Appellant has pointed out to the Court that while the parties had stipulated that 10% of the recovery would be a reasonable attorney's fee, they had further stipulated that the attorney's fee, if allowed, should not exceed Fifteen Hundred ($1500.00) DOLLARS.

The motion for rehearing is granted in part and the judgment of this Court is modified by reducing the amount of attorney's fee allowed to said sum of Fifteen Hundred ($1500.00) DOLLARS.

In all other particulars the motion for rehearing is denied.