ROBY INDUSTRIES, INC., d/b/a Intercontinental Plastics Mfg. Co., Appellant,

v.

MAXWELL ELECTRONICS CORPORATION, Appellee.

No. 16798.

Court of Civil Appeals of Texas.

Dallas.

Nov. 4, 1966.

Rehearing Denied Dec. 9, 1966.

---

Emil Corenbleth and Harold B. Berman, Dallas, for appellant-appellee.

Atwell, Grayson & Atwell and Anthony Atwell, Clark J. Matthews, II, Dallas, appellant-appellee.

BATEMAN, Justice.

This suit was brought by Roby Industries, Inc., doing business as Intercontinental Plastics Manufacturing Company, against Maxwell Electronics Corporation for debt. As both parties appeal from the judgment rendered, we shall for convenience refer to them in this opinion as "Roby" and "Maxwell".

Maxwell had contracted to furnish to the Federal Aviation Agency a quantity of electronic devices known as "transceivers" and also as "walkie-talkies", each of which was a compact radio transmitter and receiver. Maxwell was equipped to manufacture the electronic equipment included in the device, but not the plastic case enclosing it. It made a written subcontract with Roby by which the latter agreed to manufacture a mold for the making of the plastic cases, and also to furnish the necessary quantity of cases therefrom. Item 1 of the subcontract obligated Roby to furnish 1500 of the plastic cases, according to a certain delivery schedule, at an agreed price of $.696 each, or a total of $1,044, which was subsequently enlarged by agreement to 1700 cases at a total price of $1,183.20. Item 2 obligated Roby to furnish the mold or "tooling" for the cases by May 15, 1963, for an agreed price of $9,625, later increased by agreement to $10,124.50. The subcontract further provided that time was of the essence as to all provisions thereof, and that in the event of deliveries after the scheduled delivery dates the prices of all items shall be reduced by one per cent for each calendar day of delay.

The subcontract also provided that Roby had the sole responsibility of designing the cases to the complete satisfaction of Maxwell, and that Roby would submit to Maxwell for approval all drawings, sketches and proposed specifications thereof. It further provided: "Seven days shall be allowed for such submission and approval in order to insure delivery of order on time. Should disapproval of submission delay final acceptance of prints and specifications within seven days, the delivery date of May 15 shall be extended by an equal amount of calendar days beyond the seven days originally specified, without penalty." Also that if Maxwell's inspection of a sample of material furnished to it disclosed defects in excess of a certain allowable percentage the entire lot may be rejected and returned to Roby "or 100% screened by Purchaser with cost of screening billed to the Seller."

Roby sued on three alternative causes of action: (1) on sworn account in the sum of $33,920.34 plus a reasonable attorney's fee of $7,500 under Vernon's Ann. Civ.St. Art. 2226; (2) on *quantum meruit* in the sum of $33,920.34; and (3) on the written contract mentioned above Roby did not sue for attorney's fee under Art. 2226 in connection with either its second or third alternative cause of action.

Maxwell, alleging that the mold and plastic cases were defective and delivered later than the time specified, invoked the provision of the contract for liquidated damages for the late delivery; also for its costs and expenses in connection with its inspection and screening of defective material furnished by Roby.

It is not necessary for us to summarize all of the jury findings. The following are the material findings: (1) Roby substantially complied with the contract; but (2) was the cause of the delay in the manufacture and delivery of the plastic cases; (3) the written contract was not abandoned by the parties; (5) Roby did not deliver the plastic cases to Maxwell within a reasonable time, but (6) they were manufactured substantially according to the plans and specifications agreed upon, and (7) were reasonably suitable for the purposes for which they were manufactured; (8) $14,265 would reasonably and fairly compensate Roby for the material and services rendered to Maxwell for the mold and the cases; (9) $3,750 would reasonably compensate Roby for the services rendered to it in connection with the suit by its attorneys; (10-A) Maxwell approved or disapproved any submitted drawing of any perspective or piece part within seven days after the date of submission thereof; (12-A) Maxwell did not make or require any tooling changes after approval of the final drawings which caused Roby any delay in finishing the tooling; (18) Roby delivered the plastic cases fifty-two days in excess of the eight-week delivery schedule agreed upon; (21) defects in piece parts received by Maxwell from Roby exceeded the allowable percentage as prescribed in the contract; (21-A) Maxwell screened the piece parts delivered to it by Roby, and (21-B) expended $225 in doing so.

Contending that it appeared from the evidence without controversy that the completion of the mold under Item 2 of the subcontract was ninety days late, and the jury having found that there was a delay of fifty-two days in the delivery of the plastic cases, Maxwell moved that the court render judgment for Roby for $1,355.39, arrived at as follows:

| | |
|---|---:|
| Plastic cases, per amended contract | $ 1,183.20 |
| Less 52 days delay at 1% | 615.26 |
| Net due for cases | $ 567.94 |
| Mold, per amended contract | 10,124.50 |
| Less 90 days delay at 1% | 9,112.05 |
| Net due for mold | 1,012.45 |
| | $ 1,580.39 |
| Less Maxwell's screening expense | 225.00 |
| | $ 1,355.39 |

The trial court sustained this motion but added the $3,750 found by the jury to have been a reasonable attorney's fee, making the total judgment $5,105.39.

Roby claims on appeal that the judgment is for an inadequate amount, and Maxwell claims on appeal that the judgment should not have included any attorney's fee.

Roby's first point of error on appeal is in reality two points. In the first part thereof Roby contends that it was entitled to judgment for the $14,265 found by the jury in answer to Special Issue No. 8 as being the fair and reasonable value of the material and services rendered and furnished by it to Maxwell, plus the attorney's fee of $3,750 found by the jury in answer to Special Issue No. 9, or a total of $18,015.

Of course, Roby had the right to sue on the three alternative causes of action. It has been said to be good practice to do so. Musick v. Pogue, Tex.Civ.App., 330 S.W.2d 696, 698. wr. ref. n. r. e. However, in that same case, where the evidence showed that there was an express contract between the parties, it was held that neither

party could shut his eyes to the terms thereof and claim under an implied contract a larger amount than he had agreed in his express contract to accept. Under such circumstances an implied contract cannot coexist with the express contract. See the authorities cited in Musick v. Pogue, supra, 330 S.W.2d at page 699; also Neblett v. McGraw & Brewer, 41 Tex.Civ.App. 239, 91 S.W. 309, no wr. hist., and 13 Tex.Jur. 2d, Contracts, § 7, pp. 119–120. The jury found, in answer to Special Issue No. 3, that the written contract had not been abandoned. Therefore, we think the court properly disregarded the finding of $14,265 in response to Special Issue No. 8, which was obviously based on the alternative plea for *quantum meruit*. The first part of the first point of error is accordingly overruled.

In the second part of its first point of error Roby complains that the court erroneously reduced its recovery by offsets not supported by the pleadings. Maxwell pled that it was entitled to offset its liquidated damages under the contract against the agreed prices of the mold and the cases. Concerning the mold, Maxwell pled: "The mold was not completed to the point where parts, although imperfect, were able to be run until 82 days beyond the scheduled delivery date. Thus, the agreed maximum price of $9,625.00 specified in said Purchase Order was reduced by 82%, that is, to $1,732.50." It also alleged that the agreed price for the plastic cases was reduced by the liquidated damages from $1,183.20 to $949.52.

It appears from the undisputed evidence that on August 5, 1963 (the eighty-second day after May 15, 1963) representatives of the parties met and agreed that, although the mold was still "soft" and the production of the cases from a "soft mold" would be fraught with some danger both to the mold and to the cases, Maxwell would accept the cases provided they compared favorably with a sample furnished by Roby. This agreement was confirmed by a letter dated August 13, 1963 from Maxwell to Roby, which concluded with this sentence: "Acceptance of these 1700 cases does not constitute final acceptance of the mold as discussed and it is understood that additional work on the mold is necessary before it conforms with the requirements of our purchase order." Pursuant to this agreement the cases were run, delivered and accepted after part of them had been rejected, reworked and redelivered. It was also undisputed that the mold was thereafter "hardened," repaired, chromeplated and finally completed in March, 1964. It was unnecessary, and would have been improper to submit these uncontroverted facts to the jury. Rule 272, Vernon's Texas Rules of Civil Procedure. Maxwell contends that they establish its right to liquidated damages for a delay of ninety days (May 15, 1963 to August 13, 1963, the date of the letter). However, it pled a delay of only eighty-two days to August 5, 1963, and liquidated damages of only 82%.

Likewise, as to the transceiver cases, Maxwell pled delays in delivery which at one per cent per day would reduce the price of the cases from $1,183.20 to $949.52, a reduction of $233.68. However, the judgment was based on the jury finding that the delivery of the cases had been delayed fifty-two days, which at one per cent per day reduced the price from $1,183.20 to $567.94, a reduction of $615.26.

■ Rule 301, T.R.C.P., provides *inter alia* that the judgment shall conform to the pleadings, and it has been held that a judgment in excess of that sought in the plaintiff's pleadings should be reduced to the amount sued for. Sawyer v. City of San Antonio, 149 Tex. 408, 234 S.W.2d 398; Stuart v. Birdwell, Tex.Civ.App., 264 S.W.2d 452, no wr. hist.; Fidelity & Cas. Co. of N. Y. v. Moore, Tex.Civ.App., 333 S.W.2d 956, no wr. hist.; Denton County Electric Co-op., Inc. v. Burkholder, Tex.Civ. App., 354 S.W.2d 639, wr. ref. n. r. e. The same restriction must be held to apply to a defendant who is allowed an

offset against the plaintiff's claim in excess of the amount claimed in his pleadings. 52 Tex.Jur.2d, SETOFF, COUNTER-CLAIM, Etc., § 24, p. 217, and § 53, p. 258. This was a claim on which Maxwell could have maintained an independent suit against Roby, and Maxwell cannot be permitted to set off against Roby's claim an amount greater than that claimed in its answer. Rules 47, 85, 94 and 97(a), T.R.C.P.

Therefore, a correct computation of the net amount due Roby, as limited by the pleadings, would be as follows:

| | | |
|---|---:|---:|
| Plastic cases, per amended contract | $ 1,183.20 | |
| Less liquidated damages due Maxwell | 233.68 | |
| Net due for cases | | $ 949.52 |
| Mold, per amended contract | 10,124.50 | |
| Less liquidated damages due Maxwell | 8,302.09 | |
| Net due for mold | | 1,822.41 |
| | | $ 2,771.93 |
| Less Maxwell's screening expense | | 225.00 |
| Total amount due Roby | | $ 2,546.93 |

———◆———

To the extent that the trial court allowed Maxwell offsets not supported by its pleadings, as set out above, we sustain the second part of Roby's first point of error.

Under its first point of error Roby also contends that the court erred in placing the burden of proof as to Special Issue No. 2 upon it. Special Issue No. 2 inquired of the jury as to whether they found "from a preponderance of the evidence that the Plaintiff, Intercontinental Plastics Manufacturing Company, was not the cause of the delay sustained in the manufacture and delivery of the transceiver cases to the Defendant, Maxwell Electronics Corp. from February 26, 1963 until August 13, 1963." The court instructed the jury to let the form of their answer be "It was not the cause of the delay" or "It was the cause of the delay." The jury answered, "It was the cause of the delay."

█ It is true that the form of Special Issue No. 2 placed the burden of proof on Roby, but we do not agree with Roby that this was reversible error. Roby had by its written contract agreed to furnish the mold and cases to Maxwell within a certain period of time, or according to a certain specified delivery schedule. It was undisputed that there was a substantial delay in doing so. Maxwell alleged this as a breach of the contract by Roby and invoked the contractual provision for liquidated damages. Having established that Roby had not delivered either the mold or the cases at the agreed times, there was no burden on Maxwell to go further and show that such delay was "caused" by Roby. Special Issue No. 2 was material in connection with Roby's effort to show that the delay was caused by Maxwell. This was an affirmative defense and the burden was on Roby to establish it. Therefore, the burden of proof as to Special Issue No. 2 was properly placed. Moreover, in view of the fact that the jury, in answer to Special Issues Nos. 10–A and 12–A absolved Maxwell of causing the delay, if there was any error in submitting Special Issue No. 2 in this form it was harmless. Rule 434, T.R. C.P.

Roby's points Nos. 2 through 10 all complained that the trial court erred in submitting certain portions of the charge to the jury over Roby's objections. Although these nine points of error fail to comply with Rule 418(b), T.R.C.P., in that they do not direct our attention to the specific matter complained of, we have nevertheless

carefully studied them and the arguments made thereunder and find no merit in any of them. We do not believe it would add to the jurisprudence of the state for us to discuss them further. If we be mistaken in this, no error committed by the court in submitting the issues complained of amounted to such a denial of Roby's rights as would be reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, T.R.C.P. These nine points are overruled.

By its eleventh and last point of error Roby complains of the action of the trial court in rendering judgment for Maxwell for possession of the aforesaid mold, and ordering Roby to deliver it to Maxwell, subsequent to the entry of the final judgment. Maxwell did not in its answer defend on the ground that the mold had not been delivered to it; neither did it pray for judgment against Roby for title or possession or otherwise raise an issue as to the right of possession thereof. Final judgment was rendered and signed by the trial court on December 15, 1965. Eight days later, on December 23, 1965, both parties filed their amended motions for new trial and Maxwell filed its motion to modify the judgment to require Roby to deliver the mold to Maxwell and also filed its supersedeas appeal bond. On January 6, 1966 the trial court signed an order, not in so many words either sustaining or denying the motion to modify the judgment, but ordering Roby to "produce the mold * * * to the defendant," and fixing the amount of Roby's supersedeas appeal bond at $10,000. Roby's $10,000 supersedeas appeal bond was filed on the same date, January 6, 1966.

■ We agree with Roby that the trial court was without authority to make the order complained of. Since the matter arose within thirty days after the court signed the judgment, the court had the power to set aside the judgment and grant either side a new trial, either on motion or on the court's own initiative, but we find nothing in the law authorizing a trial court,

after the completion of a jury trial, the discharge of the jury and the rendition of final judgment, to reopen the case and summarily order one party to deliver valuable personal property, which it claimed the right to hold to secure its claim for payment therefor, to the other party. The order of January 6, 1966, is therefore held to be a nullity.

■ We turn now to Maxwell's appeal from that part of the judgment which awarded to Roby an attorney's fee of $3,-750. Under its first and second points of error Maxwell points out that Roby requested an attorney's fee only with respect to its action on sworn account, and contends that it was error for the court to award Roby such a fee since its suit was necessarily one for damages for breach of a special contract. We agree. Roby made it very clear in its amended petition, upon which it went to trial, that it was requesting an attorney's fee only in connection with its first alternative cause of action, which was on sworn account. Not having requested an attorney's fee in connection with the only cause of action it really had, Roby is not entitled to recover such a fee.

■ Moreover, this was not a proper suit for the allowance of an attorneys' fee. Vernon's Ann.Civ.St., Art. 2226, provides *inter alia* that one having a valid claim for personal services rendered, labor done, material furnished, or upon a sworn account may also recover a reasonable attorney's fee. As we have already held, one having a claim for damages for breach of a special contract may not maintain a suit for such damages as for breach of an implied contract and make of his case a cause of action on sworn account merely by so designating it and verifying his pleading. This was not a suit for personal services rendered, labor done or for materials furnished. Roby had agreed to do a "turnkey job," to manufacture and deliver certain finished products for certain agreed prices which did not necessarily have any connection whatever with the reasonable value of the labor

done by Roby's employees or of the materials used in the said manufacturing process. Van Zandt v. Fort Worth Press, Tex.Sup.Ct.1962, 359 S.W.2d 893; Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435; Ford Motor Co. v. Davis Brothers, Inc., Tex.Civ.App., 369 S.W.2d 664, no wr. hist.; Kirkwood & Morgan, Inc., v. Roach, Tex. Civ.App., 360 S.W.2d 173, wr. ref. n. r. e.; Parks v. Benson Co., Builders, Tex.Civ. App., 393 S.W.2d 700, wr. ref. n. r. e.

Maxwell's first and second points are therefore sustained.

The foregoing makes it unnecessary for us to pass upon Maxwell's third and fourth points.

In accordance with the views hereinabove expressed, the judgment appealed from is modified by eliminating therefrom the attorney's fee of $3,750, and by increasing Roby's recovery of $1,355.39 to $2,546.93, with interest at the legal rate from December 15, 1965. As so modified the judgment is affirmed. All costs are taxed equally between the parties.

Modified and affirmed.